# HOWARD L. CLAPP et al. EXRS.

## v.

# GEORGIE H. PETERSON.

*Filed at Ottawa June 21, 1882—Rehearing denied September Term, 1882.*

1. CORPORATIONS—*right to purchase their own stock, as against creditors.* Private corporations may purchase their own stock in exchange for money or other property, and hold, re-issue or retire the same, if it is done in entire good faith, and the exchange is of equal value, and is free from all fraud, actual or constructive, and if the corporation is not insolvent or in process of dissolution, and the rights of creditors are not affected thereby.

2. The purchase of its own stock by a corporation by the exchange of its property of equal value, though made in good faith, without any element of fraud about it, there not being anything in the apparent condition of the company to interfere with the making of the exchange, will not be allowed where it injuriously affects a creditor of the company, even though the fact of indebtedness was not at the time established or known to the stockholder.

3. SAME—*creditors have an equitable lien on capital stock.* The capital stock of an incorporated company is a fund set apart for the payment of its debts, and its creditors have a lien in equity. If diverted, they may follow it as far as it can be traced, and subject it to their claims, except as against holders who have taken it *bona fide* for a valuable consideration and without notice.

4. SAME—*shareholders are chargeable with notice of trust.* The shareholders of a corporation are conclusively charged with notice of the trust character which attaches to the capital stock. As to it, they can not occupy the *status* of innocent purchasers, but they are to all intents and purposes privies to the trust. When, therefore, they have in their hands any of this trust fund, they hold it *cum onere,* subject to all the equities which attach to it.

5. SAME—*taking property by stockholder in exchange for his stock, as against creditors.* Where a stockholder of a corporation surrendered $55,500 of his stock in the company, and received real estate of equal value therefor, and the stock was canceled, and it appeared that prior to that the company had purchased property of a third person, in which fraud was afterwards discovered and established, and a decree rendered against the company for over $5000, and that an execution issued after such decree was made was returned *nulla bona,* it was *held,* that the exchange of the stock for the real estate, and the cancellation of the stock, was a withdrawal by the stockholder of his share of the capital stock, leaving the creditor's debt unpaid; that the transaction was to the injury of the creditor; that the property so taken by

the stockholder stood charged with a trust for the payment of the decree, and that the stockholder could not be held an innocent purchaser, and that the property in his hands was in equity liable for the payment of such decree. It may be different where the corporation exchanges property for other property of equal value, or sells for money, for then it receives an equivalent which is liable for its debts.

6.  SAME — *creditor of, pursuing property taken by stockholder, is not bound to have equities between stockholders adjusted.*  On bill filed by a creditor of an insolvent corporation, after the return of an execution unsatisfied, to subject property taken by a former stockholder of the company in exchange for his stock, which property, before its exchange, was a trust fund for creditors of the corporation, the court, by its decree, found the property of the company so withdrawn and in the hands of the stockholder liable for the whole debt, instead of charging such property with the stockholder's *pro rata* share thereof:  *Held,* that the decree was proper, and that the creditor in such a case was not bound to see to the adjusting of the equities between the stockholders.

7.  LACHES—*in bringing suit to avoid sale for fraud.*  Where a fraud is practiced by the purchaser of property by means of false representations, which at the time is not known to the vendor, and the latter files his bill to set aside the sale as soon as he discovers the fraud, though several years after the sale, no *laches* can be imputed to him.

8.  DECREE—*against corporation is evidence against a former stockholder taking property charged with trust.*  A decree obtained against a private corporation on a bill in chancery filed after a stockholder had ceased to be a member of the company, by taking property of the company for his stock, is evidence of the indebtedness of the corporation on a bill by the creditor against such stockholder to subject the property taken by him to the payment of such decree.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

Messrs. ISHAM, LINCOLN, BURRY & RYERSON, for the appellants:

The exchange of stock for property between Clapp and the company was a legal and valid transaction, and one not liable to be impeached by any one.  As to the power of corporations to purchase their own stock, see *Tayler* v. *Miami Exporting Co.* 6 Ohio, 218; *Coleman* v. *Columbia Oil Co.* 51 Pa. St. 77; *Chicago, Pekin and Southwestern R. R. Co.* v.

*Marseilles,* 84 Ill. 643; *City Bank of Columbus* v. *Bruce,* 17 N. Y. 507; *Hartridge et al.* v. *Rockwell et al.* R. M. Charlt. (Ga.) 260; Angell & Ames on Corporations, sec. 280; Brice on Ultra Vires, (2d Eng. ed. 1877,) 175; *Williams* v. *Savage Manf. Co.* 3 Md. Ch. 452; *State* v. *Smith,* 48 Vt. 266; *Cooper* v. *Frederick,* 9 Ala. 738.

Where the corporation is insolvent or in the process of dissolution, an exchange of its property for stock will not be sustained as against creditors. *Wood* v. *Dummer,* 3 Mason, 308; *Vose* v. *Grant,* 15 Mass. 505; *Spear* v. *Grant,* 16 id. 9; *Curran* v. *Arkansas,* 15 How. 304; *Bartlett* v. *Drew,* 57 N. Y. 587.

A stockholder is not a trustee at all. Directors are, but as such they bear no greater relation to stockholders than to a creditor. Angell & Ames on Corporations, sec. 313; *Verplanck* v. *Mercantile Ins. Co.* 1 Edw. Ch. 87; *Bayliss* v. *Orne,* 1 Freeman's Ch. 174; *Hodges* v. *Screw Co.* 1 R. I. 312.

This is certainly a case where the doctrine of equitable estoppel should be applied, to prevent injustice. *Pierpont* v. *Bernhard,* 4 Barb. 364; *Nolte* v. *Chisman,* 88 Ill. 186; *Lloyd* v. *Lee,* 45 id. 277; Herman on Estoppel, 12.

We also submit that the decree was erroneous in holding Clapp to be accountable on all the stock surrendered by him, instead of such a *pro rata* as his stock bore to the whole capital stock. *Wood* v. *Dummer,* 3 Mason, 308; *Vose* v. *Grant,* 15 Mass. 505; *Curran* v. *Arkansas,* 15 How. 304; *Mumma* v. *Potomac Co.* 8 Pet. 281.

Messrs. PAGE & PLUM, for the appellee:

The capital stock of the corporation is a trust fund for the payment of its debts. (2 Story's Equity Jur. sec. 1252.) It is a substitute for the personal liability existing in partnerships, and the creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their debts, except as against

*bona fide* purchasers without notice of the trust.   *Sanger* v.
*Upton,* 91 U. S. 60; *Bartlett* v. *Drew,* 57 N. Y. 587; *Tink-*
*ham* v. *Borst,* 31 Barb. 407; *Spear* v. *Grant,* 16 Mass. 9;
*Ogilvie* v. *Knox Ins. Co.* 22 How. 387; *Mumma* v. *Potomac*
*Co.* 8 Pet. 286; *Curran* v. *Arkansas,* 15 How. 304; *Hightower*
v. *Thornton,* 8 Ga. 486; *Wood* v. *Dummer,* 3 Mason, 308;
*Vose* v. *Grant,* 15 Mass. 505; *Adler* v. *Milwaukee P. B. Co.*
13 Wis. 60; Perry on Trusts, secs. 217, 835, 836.

Stockholders are conclusively charged with notice of the
trust character of the capital stock.   As to it they can not
occupy the *status* of innocent purchasers, but are for all pur-
poses privies to the trust.   Thompson's Liability of Stock-
holders, sec. 13; Angell & Ames on Corporations, sec. 600;
*Wood* v. *Dummer,* 3 Mason, 313; *Curran* v. *Arkansas,* 15
How. 307; *Ogilvie* v. *Knox Ins. Co.* 22 id. 387; *Upton* v.
*Hansbrough,* 3 Biss. 436.

There is no estoppel or ground for *laches* in this case.   As
soon as appellee discovered the fraud, and in 1874, she filed
her bill, and it was pressed in the courts as fast as possible,
and only terminated September 5, 1879, when a rehearing
was denied in this court, (*Reed et al.* v. *Peterson,* 91 Ill. 288,)
and this bill was filed September 18, 1879.

It is not incumbent upon appellee to adjust the equities, if
any, between the stockholders.   *Hatch* v. *Dana,* 101 U. S.
205; *Bartlett* v. *Drew,* 57 N. Y. 587.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

By the will of her step-son, P. W. Bonner, who died in
July, 1870, appellee, Georgie H. Peterson, a resident of the
State of New York, became owner of all personal property
left by said Bonner, and in September, 1870, on application
made to her in New York, she sold all said property to the
Illinois Land and Loan Company.   On November 20, 1874,
she filed her bill against said company to set aside such sale,
and for other relief in respect thereto, on the ground that she

had been induced to make the sale through the fraudulent misrepresentations of the company, for an inadequate consideration, and on May 1, 1877, she obtained in the suit a money decree against the company, for $5653.33. An execution issued upon the decree having been returned *nulla bona*, Mrs. Peterson, on September 18, 1879, filed her bill in chancery in the present case, to subject property in the hands of Caleb Clapp to the payment of this decree. A decree was entered in her favor granting the relief sought, which, on appeal to the Appellate Court for the First District, was affirmed, and the present appeal taken to this court.

It appears that the Illinois Land and Loan Company was chartered by an act of the legislature in 1867, with a capital stock of $100,000, with 1000 shares, of $100 each, all of which was paid in. Caleb Clapp, a non-resident of the State, was a stockholder in the company, and in January, 1874, he surrendered to the company 555 shares of stock, in consideration of which the company executed to him a deed of warranty of two lots in Chicago, one of the value of $50,000, and the other of the value of $5500, that amount being the consideration stated in the deed. The stock was canceled, and was considered, at the time, of par value. Mr. Clapp continued to be till his death, and his estate still is, the owner of the lots. It is these lots which are sought to be subjected to the payment of said money decree against the company.

The legal principle which appellants' counsel lays down and insists upon as applying to the case, is, that corporations may purchase their own stock in exchange for money or other property, and hold, re-issue or retire the same, provided such act is had in entire good faith, is an exchange of equal value, and is free from all fraud, actual or constructive, this implying that the corporation is neither insolvent nor in process of dissolution. We think there must be added to the proposition the further condition that the rights of creditors are not affected.

The doctrine so elaborately urged by appellants' counsel, that a corporation has the power to purchase its own stock, seems well enough settled, and was asserted by this court in *Chicago, Pekin and Southwestern R. R. Co.* v. *Marseilles*, 84 Ill. 643. Yet, in so holding there, the qualification was added, that, in equity, the transaction might be impeached if it operated to the injury of creditors. We see nothing to show that the transaction in the present case was not in good faith, that there was any element of fraud about it, or that there was anything in the apparent condition of the company to interfere with the making of the exchange that was had. It is only as injuriously affecting the interests of creditors, we think, that the transaction can be questioned, and it is in that view that it must be considered and passed upon.

In *Sanger* v. *Upton*, 91 U. S. 60, it is laid down: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private co-partnerships. When debts are incurred a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it *bona fide* for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation for their security." This doctrine is abundantly established by the authorities. 2 Story's Equity Jur. sec. 1252; *Wood* v. *Dummer*, 3 Mason, 308; *Spear* v. *Grant*, 15 Mass. 505; *Curran* v. *Arkansas*, 15 How. 304; *Bartlett* v. *Drew*, 57 N. Y. 587.

The shareholders of a corporation are conclusively charged with notice of the trust character which attaches to its capital stock. As to it they can not occupy the *status* of inno-

cent purchasers, but they are to all intents and purposes privies to the trust. When, therefore, they have in their hands any of this trust fund, they hold it *cum onere*, subject to all the equities which attach to it. Thompson's Liability of Stockholders, sec. 13; *Wood* v. *Dummer*, 3 Mason, 312.

It is objected, against the principles above stated, that the cases in which they were declared were where there was actual or constructive fraud or unfairness, where the corporations were insolvent, or in process of being wound up. The question naturally would arise mostly in such circumstances, but the principles enunciated are general in scope, following from the nature of the capital stock of corporations, and the relation of a stockholder to the corporation, and we know of no limitation of their application as above suggested, or reason for denial of their full applicability to the present case. Indeed, we do not understand appellants' counsel as asserting the validity of the purchase, or reduction by a corporation of its stock, where it should directly appear that it was an injury to its creditors. But it is denied that there was any such injury in this case. It is said, first, the company actually owed no one at the time, and even if it did, as the bill admits that the shares at the time of the exchange were valued at par, and worth full purported value, it follows from the stock being worth its par value, as a matter of course, that the company was then entirely solvent, and had assets sufficient to discharge all its debts, if it had any debts, and also to pay the stock in full,—that under no other circumstances could the admission of the bill be true. There was no proof as to the condition of the company, or the value of the stock, save the testimony of the secretary of the company that at the time of the deed to Clapp the stock in the company was at par value technically,—that he did not know what the market value was, and did not know that it had any market value. The admission of the bill was the simple fact that the stock was at par. The complainant, of course, knew

nothing as to what made the stock at par. But if the stock was at par, in so rating it this indebtedness to appellee could not have been taken into account. It was supposed, of course, the purchase of personal property, which had been made of appellee, would stand, and that there was no liability on account of it. If, then, the stock was just at par, not considering appellee's claim with that claim recognized, the assets would have failed to pay the indebtedness of the company by the amount of her claim, to-wit, $5653.33, and to that amount the company was insolvent.

It is insisted that this exchange of corporate property for stock was unassailable by any one, because it was an exchange of equal values—the lots being worth $55,500, and the shares of stock being worth $55,500, there was equal value received, and there could be harm to no one. This can not be so, as respects creditors. Suppose all the remaining property of the company had been one other lot worth $44,500, and the company had made a like exchange with another stockholder of that lot for the remaining 445 shares of stock, and canceled the stock, what would there have been left to pay creditors? The partial exchange which was made affected the rights of creditors in a like way, only to a less extent. It is not as if there had been an exchange made with Clapp of these lots for other real property of equal value, or as if there had been a sale to him for $55,000 in money. In such case a substitute would have been furnished to the company to which creditors might have had recourse for payment of their debts. But the exchange of corporate property for shares of stock, and canceling the stock, furnishes no equivalent for creditors.

Although the money decree in favor of appellee was not obtained until in 1877, some time after Clapp's purchase, yet the cause of action of appellee against the company (the fraudulent purchase of the personal property from her) arose in September, 1870, which was before the purchase by Clapp, that

3—104 ILL.

being in January, 1874, so that at the time of Clapp's purchase appellee must be regarded as being a creditor of the company.

We can but regard the transaction in question, of the exchange of stock for the lots and the cancellation of the stock, as a withdrawal by the stockholder of his share of the capital stock, leaving appellee's debt against the company unpaid; that the transaction was to the injury of appellee as a creditor; that the property taken by Clapp stood charged with a trust for the payment of appellee's claim; that Clapp can not be held to be an innocent purchaser, and that the property in his hands is affected with the trust, and appellee may pursue the property and subject it to the satisfaction of her debt.

It is insisted there was such *laches* here on the part of appellee in lying by for so long a time before the purchase by Clapp, taking no steps to disaffirm the fraudulent purchase from her, as should estop her from resort to this property in the hands of Clapp. Had appellee known of the fraud upon her, or should have known of it in the exercise of reasonable diligence, there would have been force in this position; but the bill alleges that on the discovery of the fraud appellee filed her former bill to set aside the fraudulent sale, and if such was the fact no *laches* would be imputable to her. Appellee's residence in a distant State would be a circumstance which would go to account for not sooner discovering the alleged fraud. We are not prepared to say that there was such *laches* here as should disentitle to the relief sought.

It is said that appellee's decree against the company was rendered, as well as the suit commenced, after Clapp had ceased to be a member of the company, and not being a party to the suit he should not be bound by the decree against the company, and that as against him the decree should not be taken as evidence of the alleged fraudulent purchase by the company from appellee. We think Clapp

took the property affected with all equities as against the company, and subject to the equity of being charged with whatever prior claim might be established as against the company, and the decree is the highest evidence of an indebtedness by the company.

It is finally urged that at least the decree is erroneous in holding the property received by Clapp to be chargeable with the whole debt, instead of a share of it, in the proportion his stock bore to the whole capital stock. As among the stockholders such a *pro rata* decree would have been equitable. But in such a case as this, of a judgment creditor, after return of an execution against the company unsatisfied, seeking in a court of equity to reach certain specific property once belonging to the company, as charged with a trust for the payment of his debt, he may pursue the property into whosesoever hands he may find it, where it stands affected with the trust, and subject it to the satisfaction of his debt, and he is not obliged to attend to adjusting the equities between the stockholders. We regard the following authorities as fully warranting this, and the form of the decree in this respect: *Bartlett* v. *Drew*, 57 N. Y. 587; *Marsh* v. *Burroughs*, 1 Woods, 463; *Hatch* v. *Dana*, 101 U. S. 205.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*