83  675
s183s606

---

## Edward T. Singer and Charles G. Singer v. Dillon B. Hutchinson and William W. Post, for the use of, etc.

1. JUDGMENTS—*Against Corporations, upon Whom Conclusive.*—A judgment against a corporation is conclusive as against its stockholders until reversed or impeached for fraud.

2. SAME—*Conclusive as to All Defenses Provable.*—A judgment is conclusive upon all questions which were or might have been proved under the issues.

3. CORPORATIONS—*Construction of the Statute Extending the Existence of.*—Section 1 of the act to amend an act entitled "Abatements" approved March, 1845, and to extend the time for closing up the affairs of corporations, in force March 24, 1869 (Laws, 1869, 1), providing that all corporations created by special acts or under general laws, and whose charters have expired, shall continue their corporate capacity during the term of two years for the purpose of collecting its debts, etc., is a general

law, and so far as practical should be applied to foreign corporations having property here and located in this State for business purposes.

4. SAME—*Capital Stock, When a Trust Fund.*—In equity, the capital stock and property of a corporation is a trust fund for the payment of its debts.

5. SAME—*Assets—How Regarded in Equity.*—Equity regards the assets of a corporation in the hands of stockholders as the property of, the corporation and subject to the claims of its creditors.

6. PRACTICE—*Creditors' Bills Against Corporations.*—A judgment creditor, as complainant in a creditor's bill against a corporation, has nothing to do with the equities existing between the stockholders, and when a part only of the stockholders is made parties defendant, their remedy, if they desire an equitable distribution of the burdens, is to file a cross-bill.

7. SAME—*Parties to Creditors' Bills.*—In a creditor's bill against a corporation, it is not necessary to make all of the stockholders parties defendant as it is in a bill under section 25 of chapter 32, R. S., entitled "Corporations," to dissolve and close up its business.

**Creditor's Bill.**—Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed July 20, 1899.

**Statement by the Court.**—This is an appeal from a decree rendered on a creditor's bill filed by appellees, as complainants, January 7, 1898, against appellants and others as defendants, to reach the assets of the Singer & Talcott Stone Company, in the possession of the defendants as stockholders.

Edward T. Singer, Charles G. Singer, Walter Singer, Harriet A. Singer, Charles B. Kimball, Spencer Kimball and the Singer & Talcott Stone Company were made defendants to the bill. All defendants were served with process, except Walter Singer and Charles B. Kimball, in respect to whom process was returned "not found." On the hearing the bill was dismissed as to Walter H. Singer, Harriet A. Singer, Charles B. Kimball and Spencer Kimball. Answers were filed by Edward T. Singer, Charles G. Singer, Harriet A. Singer and Spencer Kimball, Harriet A. denying that she ever was a stockholder in the Singer & Talcott Stone Company, or ever had anything to do with its management, and Spencer Kimball averring that in the year

1875, he sold all his stock in the corporation, and that since said time he has had no interest in the corporation or any knowledge of its affairs.

The evidence shows that June 12, 1897, a judgment was rendered in the Superior Court of Cook County in a suit in which appellees were plaintiffs and the Singer & Talcott Stone Company was defendant, in favor of appellees, for the sum of $15,496.33 and costs; that August 10, 1897, an execution was issued on said judgment, which execution was returned by the sheriff November 8, 1897, "no property found."

The complainants read in evidence the following from the joint and several answer of Edward T. Singer and Charles G. Singer, which answer was verified by the joint and several affidavit of the said defendants:

"These defendants allege the facts to be that from the time of the expiration of the charter of said company and for several years before, it, the said corporation, had no property whatever except the piece of real estate in said bill mentioned and admitted to have been sold, all of the other property that had ever belonged to said corporation having before that time been disposed of, and the proceeds thereof having been distributed among its stockholders in accordance with their respective rights. The defendants further allege the facts to be that on January 3, 1893, for the purpose of disposing of all the property of said corporation and absolutely winding up the affairs of said corporation and distributing among its stockholders, according to their respective rights, all of the assets of said corporation, the said real estate was sold and disposed of, and defendants admit that on or about the 3d of January, 1893, the Singer & Talcott Stone Company conveyed to one Charles A. Chapin the property in said bill described, for the consideration of $509,178, which consideration was received, partly in money and partly in promissory notes secured by mortgages on divers pieces of real estate, and that said deed of conveyance was executed on behalf of said company by Edward T. Singer as president and Charles G. Singer as secretary of said company.

"And these defendants further answering, aver that said consideration for said conveyance was received by these defendants for the Singer & Talcott Stone Company, and

the entire net proceeds thereof were immediately thereafter, and on or about the 6th day of January, 1893, distributed to and among the several stockholders of said company in proportion to the amount of stock in said company held by said stockholders respectively; to this defendant, Edward T. Singer, $130,500; to this defendant, Charles G. Singer, $55,000; to Walter H. Singer, $88,500; to Horace H. Singer, now deceased, $17,000, and to these defendants, Edward T. Singer, Charles G. Singer and Walter H. Singer, jointly as trustees and in trust, to pay the income thereof to Harriet Singer so long as she shall live, $203,637. The capital stock of said company consisted of 300 shares of $100 each. Before having been divided the same was held as follows: Said Edward T. Singer, eighty shares; said Walter H. Singer held fifty-five shares; the said Charles G. Singer held thirty-five shares; Horace M. Singer, now deceased, held ten shares; the said Edward T. Singer, Charles G. Singer and Walter H. Singer held as trustees jointly 120 shares; that the persons so named as receiving said proceeds of said sale constituted the sole and only stockholders of said corporation at the time of said distribution, and at the time of the expiration of its charter as aforesaid, and for several years prior to that time.

"These defendants further answering admit that they claim, and they aver that it was true in fact, that the Singer & Talcott Stone Company is and was a dissolved corporation, and that such dissolution occurred before and without the payment of any such sum of money whatever to said complainants; that said defendants took no notice and were not bound to take any notice of said supposed judgment, and they allege that such supposed judgment did not exist at the time of the dissolution of said corporation, or for many years thereafter; and that also at the time of said distribution of the proceeds of the consideration of said conveyance above set forth, no claim had been made by said complainants or either of them upon said corporation, its officers or agents, and they deny that there was any sum of money due or to become due from said corporation to said complainants, or either of them, on account of services in making such sale, or upon any other account whatever; and they deny that during the life of said corporation, or prior to its dissolution, as aforesaid, said complainants, or either of them, had or pretended to have any claim or demand against said corporation. And on information and belief they deny that the Singer & Talcott Stone Company, at any

time since the expiration of its charter as aforesaid, had any corporate existence or capacity, by statute or otherwise, to be sued by said complainants, and they allege the fact to be, that if there is or was any statute whatever, which continued the capacity of said corporation after the 20th of April, 1892, for the purpose of being sued, such suit could be maintained under such statute only upon a claim that existed against said corporation at the date last aforesaid, and that such complainants had not, at that date, or any time prior thereto, any claim whatever against said corporation, or its corporate assets, or trust funds, still liable to be sued, prosecuted or followed in this proceeding by said complainants for the payment of said proposed judgment, and they deny that the other defendants herein, or either of them, are liable to be sued or prosecuted, as aforesaid, and they deny that good or proper service upon said corporation was made in this cause, and allege that owing to its dissolution as above set forth, no proper service could be made upon said corporation at or since the time of the commencement of this suit."

Complainants called as a witness appellee William W. Post, who testified in substance that he and Hutchinson, the complainants in the present bill, were the plaintiffs in the suit in which the judgment above mentioned was recovered, and that no part of the judgment had been paid. The witness was also examined and testified at considerable length as to the facts on which the judgment was recovered. Subsequently, and before complainants closed their evidence, the court excluded all of Post's evidence which did "not go simply to identify the cause and the parties," meaning presumably, to let stand only that part of the testimony showing that the complainants in the bill were the plaintiffs in the judgment.

Appellees also put in evidence the articles of incorporation of the Singer & Talcott Stone Company, and a warranty deed from that company to Charles A. Chapin of Niles, Michigan, of date January 3, 1893, for the consideration of $509,178, of lots 29 to 33, both inclusive, except the north ten feet of lot 33 lying west of the east 35 feet thereof, in block 89, School Section addition to Chicago, county of Cook and State of Illinois, signed Edward T. Singer,

president, Charles G. Singer, secretary, and impressed with the corporate seal of the Singer & Talcott Stone Company.

The defendants (appellants here) offered evidence tending to show that appellees were not entitled to recover in the action at law, in other words, such evidence as might have been admissible in that suit, which evidence the court excluded. The ordering part of the decree is as follows:

"It is therefore ordered and decreed by the court, that the bill of complaint herein be, and the same is hereby dismissed without prejudice as to the defendant, Harriet A. Singer, and it is further ordered, adjudged and decreed by the court, that the defendants, Edward T. Singer and Charles G. Singer and the Singer & Talcott Stone Company, pay to the complainants, Dillon B. Hutchinson and William W. Post, for the use of said Post, within ten days from this date, $16,639.66, with lawful interest thereon, from date until paid, and the costs of this suit to be taxed by the clerk of this court, and that this decree for the payment to be made as aforesaid, shall be and is hereby made joint and several as to each of the three defendants, Edward T. Singer, Charles G. Singer and the Singer & Talcott Stone Company, until the whole of said amounts so decreed to be paid shall be collected or paid under this decree, and that the complainants, for the use of the complainant William W. Post, may have execution accordingly for the collection of said amount."

IRA W. & C. C. BUELL, attorneys for appellants; A. B. JENKS, of counsel.

A judgment against a corporation fixing its liability and the amount of its indebtedness is not admissible in a proceeding against a stockholder as evidence of the validity and amount of the claim on which the judgment was recovered. Chesnut v. Pennell, 92 Ill. 55.

BARNUM, MOTT & BARNUM, attorneys for appellees; T. A. MORAN, of counsel.

Parties may proceed by bill against a part of the stockholders without joining all, subject to the right of those brought in by a bill to bring in the others by cross-bill. Clapp v. Peterson, 104 Ill. 26; Hickling v. Wilson, 104 Ill.

Singer v. Hutchinson.

54; Peterson v. Lynde, 112 Ill. 196; Young v. Farwell, 139 Ill. 326; see also Hatch v. Dana, 101 U. S. 205; Coleman v. Howe, 53 Ill. App. 82.

A stockholder who is made a defendant to a creditor's bill may file a cross-bill and bring in the stockholders who are not parties, and enforce contribution from them. Young v. Farwell, 139 Ill. 332. But if he neglects to do so, the remedy against himself does not fail. Coleman v. Howe, 154 Ill. 458.

The stockholders of a corporation are bound by a judgment against the corporation in the absence of fraud. Clapp v. Peterson, 104 Ill. 26; Gt. Western Tel. Co. v. Barker, 56 Ill. App. 402, 421; Hendrickson v. Bradley, 29 C. C. A. 303, 311; Stephens v. Fox, 83 N. Y. 313.

A stockholder of the company is equally bound and concluded for the reason that he is an integral part of the corporation, and in contemplation of law "he was before the court in all the proceedings touching the company of which he was a member." Sanger v. Upton, 91 U. S. 56; Wilson v. Seymour, 40 U. S. App. 567. It can not be re-litigated in this case for the reason that the defendants, as shareholders, being represented by the corporation in that suit, have already had their day in court on this question. Hendrickson v. Bradly, 29 C. C. A. 303, at page 311; Stutz v. Handley, 41 Fed. 537.

Mr. Justice Adams delivered the opinion of the court.

Appellants' counsel, in their argument, make the following objections:

1. "The judgment obtained at law against the Stone Company is not binding on appellants."

2. "The finding of the court in this decree that the Stone Company employed appellees before the expiration of its charter, and while it had power so to do, is not supported by any evidence in the case."

3. "The company had no power during the two years subsequent to the expiration of its charter to make any new contract."

4. "No living solvent stockholder should have been dismissed out of court, but the decree, if appellees were entitled

to a decree, should have been that the stockholders should pay ratably."

These objections will be considered in the order stated.

A judgment against a corporation is conclusive as against its stockholders until reversed or impeached for fraud. 2 Morawitz on Corp., Sec. 886; 1 Cook on Corp., Sec. 209; Bennett v. Great West. Tel. Co., 53 Ill. App. 276; Great West. Tel. Co. v. Gray, 122 Ill. 630; Bates v. Great West. Tel. Co., 134 Ib. 536; Hawkins v. Glenn, 131 U. 'S. 319; Hendrickson v. Bradley, 29 Ct. Ct. App. (U. S.), 303, 311; Thayer v. New Eng. L. Co., 108 Mass. 523, 528.

In a note to Bissit v. Ky. River Navigation Co., 15 Fed. Rep. 353, at page 360, a great many cases are collated on "the effect as to stockholders and officers of a judgment against the corporation," showing that the authorities are almost unanimous in holding that such a judgment is conclusive against the stockholders until reversed or impeached for fraud. The judgment has not been reversed, nor have appellants attempted to impeach it for fraud. On the contrary, appellants' counsel, in their argument, say:

"We do not maintain .that the judgment against the Stone Company is void, nor do we seek to impeach the record of the same."

The court in its decree found as follows, in respect to the claim of appellees, which was the foundation of their judgment against the Singer & Talcott Stone Company:

"Said claim so reduced to judgment, and the liability of said company, were legitimately incurred by said company in the exercise of said company's corporate capacity and power, in and about the selling and disposing of its corporate property, and was so incurred by the employment of the Singer & Talcott Stone Company of the complainants herein, on or about January 10, 1892, as real estate brokers, to procure for said company a purchaser for its said above described real estate," etc.

The Singer & Talcott Stone Company was organized under "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," approved and in force February 18, 1857. The com-

pany was organized April 20, 1872, and the term of its corporate existence was fixed by its articles of association and the license issued in pursuance thereof, at twenty years, viz., until April 20, 1892. The specific objection to the above finding of the court is that, excluding the evidence of Post, there is no evidence to justify the finding that appellees were employed by the Singer & Talcott Stone Company prior to April 20, 1892. The pleadings in the lawsuit in which the judgment against the Singer & Talcott Stone Company was recovered by appellees, consisting of a declaration and plea of the general issue, were put in evidence by appellees. The declaration contains a special count, in which is averred the employment of appellees by the company to procure for the company a purchaser of certain described real estate owned by it, at ten dollars per square foot, or at such price as would be satisfactory to the company, appellees, for procuring such purchaser, to receive two and one-half per cent of the price paid, and that appellees did procure such purchaser at a price satisfactory to the company, etc.

The company was sued and declared against by the name " Singer & Talcott Stone Co., a corporation," and filed a plea of the general issue in that name, supported by an affidavit of merits by Edward T. Singer, in which affidavit the affiant states that he is the president of the Singer & Talcott Stone Company. The record of the judgment shows that the company, by its attorney, moved for a new trial and in arrest of judgment, and argued those motions, from all of which it appears that the cause was tried and judgment rendered on the merits. The judgment so rendered is conclusive that all matters essential to a recovery were proved. The action was assumpsit, and it was necessary to appear that the defendant, the Singer & Talcott Stone Company, had made a contract with the plaintiffs, which it had the corporate capacity to make. It was under the pleadings clearly competent for the Stone Company to show, if such was the case, that the contract under which the plaintiffs claimed was not within the corporate power of the company; that it was *ultra vires*, and, therefore, that in legal

contemplation there was no contract. A judgment is conclusive as to all defenses provable under the issues. 2 Black on Judgments, Sec. 609.

The judgment being conclusive as against the company, and therefore against appellants, that the company had the corporate capacity to make the contract on which the judgment was taxed, then if the company had not such corporate capacity after April 20, 1892, as assumed by appellants' counsel, the court was fully warranted by the record of the lawsuit in finding that the liability of the company was incurred prior to April 20, 1892.

In support of the contention that the liability occurred prior to April 20, 1892, counsel for appellant rely on the averment in the declaration, "That on the 1st day of June, 1892, in consideration that said plaintiffs, at the request of said defendant, would procure a purchaser," etc. But it is elementary that a statement of the precise time is not necessary, and that a plaintiff is not bound to prove the precise time stated.

"Thus, in assumpsit upon a contract, the day upon which it is made being alleged only for form, the plaintiff is at liberty to prove that the contract, whether it be express or implied, was made at any other time." 1 Chitty on Pl., 9th Am. Ed., 257; see, also, Kipp v. Bell, 86 Ill. 577.

Such being the law, it can not be assumed that the precise time laid in the declaration was the time proved on the trial.

Section 1 of "An act to amend an act entitled 'Abatements,' approved March, 1845, and to extend the time for closing up the affairs of corporations," in force March 24, 1869, (Sess. Laws 1869, p. 1,) is as follows:

"Be it enacted by the People of the State of Illinois, represented in the General Assembly: That all corporations created by special acts or under general laws, and whose charter or acts of incorporation may have expired for any reason whatever, shall continue their corporate capacity during the term of two years for the sole purpose of collecting the debts due to said corporation, selling and conveying the property and estate thereof."

If this act applies to the Singer & Talcott Stone Company, then that company had power for at least two years after April 20, 1892, to sell and convey its property; but appellants' counsel, basing their argument on the words " may have expired," contend.that it does not apply to that company, but only to corporations created prior to its passage, and that the Singer & Talcott Stone Company was organized April 20, 1872, subsequently to the passage of the act. We can not accede to this view. The act is general, applies in terms to all corporations, and is in part amendatory of chapter 1 of the Revised Statutes of 1841, entitled " Abatements," which is a general law; and section 1, quoted *supra*, confers a special privilege, namely, an extension of corporate life for two years beyond the time fixed by the charter. No reason is perceived why the legislature should discriminate in favor of corporations organized prior to the passage of the act and against those thereafter organized. In Ramsey v. P. M. & F. Ins. Co., 55 Ill. 311, the court, commenting on the, act in question, say : " It was evidently the intention of the legislature to preserve to corporations whose charters might be forfeited or their organization dissolved, the right to collect their debts and sell their property," etc.   Ib. p. 316.

In Life Ass'n of America v. Fassett, 102 Ill. 315, one of the questions presented was whether the corporate life of the association, which was a Missouri corporation, had become extinct by reason of a decree of the Circuit Court of St. Louis, entered October 16, 1879, declaring it insolvent and dissolving it.   October 15, 1879, prior to the entry of the decree, an attachment had been levied on the land of the association in this State.   The court, after referring to sections 10 and 25 of chapter 32 of the statutes, by the former of which sections the corporate capacity of corporations is extended as by section 1 of the act of 1869, say :

" From these and other provisions of the statute, it clearly appears that it is a part of the settled policy of the State, at least so far as domestic corporations are concerned, that upon their dissolution, however that may be effected, they shall nevertheless be regarded as still existing for the pur-

pose of settling up their affairs and having their property applied for the payment of their just debts, and we see no sufficient reasons why the same policy should not, so far as practicable, be extended to foreign corporations that have property here, and are located among us for business purposes."

We have no doubt that section 1 of the act of 1869 applies equally to corporations organized before and after its passage, which being true, the Singer & Talcott Stone Company had ample power to sell and convey its property at any time between April 20, 1892, and April 20, 1894, and it evidently acted with this understanding, the deed of the land from the company to Chapin being dated January 3, 1893, and sealed with the corporate seal of the company. And if it had power to sell, it had power to employ an agent for that purpose. Indeed, being a corporation, it could act only by an agent.

The special count of the declaration in the lawsuit is for commissions earned by appellees in the procuring the purchaser of the company's property, and the copy of the account sued on, which is, in substance, a bill of particulars, is for commissions earned in procuring the purchaser for the property, describing it, and limited appellees to proof of that claim. What has been said disposes of appellants' second and third objections.

The objection that it was error to dismiss the bill against some of the defendant stockholders, and that the decree should have been that the claim of appellees should be paid by all the stockholders, they contributing ratably, is untenable. This is a creditor's bill and not a bill under section 25 of the incorporation act to dissolve and close up the business of the corporation, and it is not necessary to make all stockholders defendants. Young v. Farwell, 139 Ill. 332; Palmer v. Woods, 149 Ib. 146, 155; Bartlett v. Drew, 57 N. Y. 587; Hatch v. Dana, 101 U. S. 205.

The case of Bartlett v. Drew, *supra*, approved in 104 Ill. 35, was in its facts similar to the case at bar. In that case the plaintiffs had recovered judgment against the New Jersey Steam Navigation Company and an execution had been

issued on the judgment and returned unsatisfied. Prior to the commencement of the suit in which the judgment was recovered, the Navigation Company had sold three of its steamboats and distributed the proceeds of the sale, $750,000, among its stockholders; the action was brought against the corporation and Daniel Drew, a stockholder, who had received as his share in the proceeds of the sale a much larger amount than the plaintiff's judgment. Drew objected, as do appellants here, that the suit should be against all the stockholders, to the end that each might contribute his proportion of the plaintiff's judgment. The court overruled the objection, saying, among other things:

" We are of opinion that the plaintiff's right of action rests upon a very plain principle of equity. This is not a proceeding to dissolve and wind up the affairs of a corpora- tion, or to marshal its assets, but the ordinary proceeding to collect a debt from a debtor unwilling to pay." * * * " It is a very plain proposition that the stock and prop- erty of every corporation is to be regarded as a trust fund for the payment of its debts, and its creditors have a lien and the right to priority of payment over any stockholder. When stock and property have been divided between stock- holders before all the debts of the corporation have been discharged, if any one stockholder is compelled to pay more than his fair share of any unpaid debt, he may resort to his associates for equitable contribution; but with that pro- ceeding the creditor has nothing to do, unless he chooses to intervene to settle equities that may exist between his debtors."

That the capital stock and property of a corporation is a trust fund for the payment of its debts, is fundamental in equity, and has been expressly recognized by the Supreme Court. Clapp v. Peterson, 104 Ill. 26; Coleman v. Howe, 154 Ib. 458.

Equity regards the assets of a corporation in the hands of stockholders as the property of the corporation and sub- ject to the claims of creditors of the corporation. In Bart- lett v. Drew, *supra*, the court say:

" Drew had a large amount of the assets in his possession which belonged to the corporation when the plaintiff's demand accrued, and some portion of which should have been applied in discharge of its obligation to the plaintiff."

The Supreme Court of this State has also decided that a judgment creditor, complainant in a creditor's bill, has nothing to do with the equities as between the stockholders, and that when part only of the stockholders are made defendants, their remedy, if they desire equitable distribution of burden, is to file a cross-bill. Clapp v. Peterson, 104 Ill. 26, 35; Coleman v. Howe, 154 Ib. 474.

In the present case no cross-bill was filed, nor was leave asked to file one. If it be suggested that this was unnecessary because all stockholders were originally parties to the bill, the obvious answer is, that appellees having the right to proceed against part of the stockholders, clearly had the right to dismiss as to any of them, and the appellants were not warranted in presuming that they would not so do, and in omitting, on such presumption, to file a cross-bill. However, the remedy of appellants for equitable distribution of the burden of payment is not lost by this omission; they may file an original bill for that purpose if they see fit so to do.

Appellants further object to the refusal of the court to permit cross-examination of the witness, Post, and to the exclusion of evidence offered by them on the merits of the claim of appellees which was reduced to judgment. All of Post's evidence having been excluded except that part of his testimony that the complainants in the present suit were the plaintiffs in the lawsuit, which evidence was unnecessary, the names being the same, the case stood as if Post had not been examined, and there was no ground for cross-examination. The evidence offered by appellants was properly excluded, because, the judgment being conclusive against them, they had no right to a re-trial of the suit at law. The evidence showed that each of the appellants has in his possession money of the Singer & Talcott Stone Company in amount largely in excess of the judgment against the company.

The decree will be affirmed.