## Meridian Amusement Company of Illinois, Appellant, v. Home Theater Company et al., Appellees.

1. CORPORATIONS, § 140*—*right of corporation to sell stock owned by stockholders*. A corporation cannot sell the stock owned by the stockholders therein.

2. CORPORATIONS, § 144*—*when contract under which stock is delivered is one between purchaser and stockholders*. Contract under which all of the stock of a corporation was delivered, *held* to have been a contract between the purchasers and the stockholders although it was executed in the corporate name.

3. LANDLORD AND TENANT, § 428*—*when contemporaneous contract is part of sublease*. A contract executed contemporaneously with the sublease of a theater building for a moving picture show whereby the sublessor, which was the lessee of another theater building near by, agreed not to conduct a moving picture show therein, *held* a part of the contract of lease.

4. LANDLORD AND TENANT—*when contract executed contemporaneously with sublease is valid and binding*. A contract executed contemporaneously with the sublease of a theater building for a moving picture show whereby the sublessor, which was the lessee of another theater building near by, agreed not to conduct a moving picture show therein, *held* a valid and binding contract supported by good consideration.

5. CORPORATIONS—*corporate lessor not released from obligation of contract by change in stockholders*. Where the corporate lessee of two nearby theater buildings subleases one of such buildings for a moving picture show and contemporaneously with the execution of the sublease enters into a contract whereby it agrees not to conduct a moving picture show in the other building, the force and effect of such contract cannot be destroyed by a change in the stockholders of the sublessor corporation.

6. CORPORATIONS—*right of corporate lessor to take advantage of want of knowledge of purchasers of stock*. The fact that the purchasers of all of the stock of a sublessor corporation did not know of the existence of a restrictive contract, executed contemporaneously with the sublease, does not permit the corporation as an entity to claim that it is not bound thereby.

7. CORPORATIONS, § 194*—*debts and obligations not eliminated by change in stockholders*. The debts and obligations of a corporation are not eliminated by a change in its stockholders.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

8.  Corporations, § 197*—*what is relation of shareholders to capital stock.* The shareholders of a corporation are conclusively charged with notice of the trust character which attaches to its capital stock. As to it they cannot occupy the status of innocent purchasers, but are to all intents and purposes privies to the trust; and hence when they have in their hands any of such trust fund, they hold it *cum onere* subject to all of the equities which attach to it.

9.  Corporations—*when transactions of purchasers of all of stock of corporate lessee are fraudulent as to sublessee.* When persons who purchase all of the stock of a corporation and function as stockholders thereof cause to be incorporated another corporation to which they transfer a lease executed by their corporation prior to their acquisition of its stock and the new corporation admits a violation of a restrictive agreement which was part of the lease, *held* that the transactions, even though not tainted by actual fraud, operated as a constructive fraud on the rights of the lessee.

10.  Corporations—*when purchasers of all of stock of lessor corporation are charged with notice of restrictive agreement forming part of lease.* Persons who purchase all of the stock of a lessor corporation and function as stockholders thereof are charged with notice of a restrictive agreement forming part of the lease whether they have actual notice thereof or not.

11.  Corporations, § 194*—*when corporation not relieved of obligations.* A corporation cannot be relieved of its obligations by its stockholders' causing another corporation to be organized and transferring all of the former's valuable assets to the latter.

12.  Landlord and tenant, § 431*—*what is consideration for renewal of sublease.* Where a corporation gives a short term sublease on a theater building for a moving picture show with an option for renewal at a higher rental and contemporaneously executes an agreement whereby it agrees not to conduct a moving picture show in a nearby theater building of which also it is the lessee, and the sublessee renews its lease, *held* that the sublessee has a right to rely on the restrictive agreement as a consideration for such renewal at the increased rental.

13.  Corporations—*when both old and new corporations are subject to injunction for violation of lease.* Where persons who purchase all of the stock of a corporation and function as stockholders thereof cause to be incorporated another corporation to which they transfer a lease executed by their corporation prior to their acquisition of its stock, and the new corporation admits a violation of a restrictive agreement which was part of the lease, *held* that an injunction will lie against both the old and the new corporations.

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

Appeal from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the October term, 1918. Affirmed in part, reversed in part and remanded with directions. Opinion filed July 9, 1919. Rehearing denied October 14, 1919. *Certiorari* denied by Supreme Court (making opinion final).

ACTON & ACTON, for appellant.

CHARLES TROUP, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

On and prior to February 6, 1915, the Danville Theater Company owned two buildings in the City of Danville, Illinois, which it had leased to the Barhydt-Hoeffler Company, a corporation. These buildings were used by the latter company for amusement purposes and were commonly known respectively as the "Lyric" and "Fischer" theaters. On February 6, 1915, the Barhydt-Hoeffler Company sublet the Fischer theater to the Meridian Amusement Company, appellant. Under the provisions of this lease, appellant was to use the theater for showing moving pictures only and no vaudeville act should be permitted therein. The lease ran from February 18 to August 31, 1915, at a rental of $1,277, and payable $200 per month in advance. It was further agreed in the lease that appellant might extend the period thereof to the 31st day of August, 1922, by written notice to the lessor on or before the 1st day of August, 1915, for a rental of $27,600, payable $300 per month on the first day of each month until August 1, 1916, and thereafter $333.34 per month on the first day of each month for the balance of the term. This lease was extended by the parties thereto in accordance with the terms expressed therein.

On the same day that this lease was executed, the

482    APPELLATE COURTS OF ILLINOIS.

Meridian Amusement Co. v. Home Theater Co., 215 Ill. App. 479.

Barhydt-Hoeffler Company executed a written agreement as follows:

"In consideration of the execution of a lease of the Fischer Opera House, at Danville, Illinois, dated February 6, 1915, between Barhydt-Hoeffler Company, lessor, and the Meridian Amusement Company, lessee, said lessor, as the lessee of a like period of the Lyric Theater, near to said Opera House, agrees that they shall not during the existence of said lease, conduct a picture show in said Lyric Theater by running more than two reels of films of not more than 1,100 feet each, in any one show, without the written consent of the lessee.

Barhydt-Hoeffler Co.<br>By L. F. Allardt, Pres.

"Attest:
    H. J. Allardt,
        Secretary."

On October 4, 1916, the Barhydt-Hoeffler Company, party of the first part, entered into a written agreement with eleven men, parties of the second part, by which the former agreed to sell to the latter the lease for the Palace theater, formerly known as the Lyric theater, together with a franchise for exclusive vaudeville bookings for Danville made with the United Booking Offices of America and the sublease made between the former and the Meridian Amusement Company and the consent to said sublease by the Danville Theater Company, for the consideration of the sum of $10,000; and the Barhydt-Hoeffler Company agreed to deliver the stock of said company and the possession of the Palace theater, the said lease, fixtures and operating apparatus, etc., clear and free from debts, loans or obligations whatsoever, and to turn over the possession of said Palace theater together with the receipts from the sale of tickets beginning with October 1, 1916, and that all bills, obligations or debts theretofore contracted or debts due for maintenance or operation of said theater or building for the month

of September, or prior thereto, be paid by the Bar-hydt-Hoeffler Company. At the time of this last transaction, L. H. Balfe, his wife and D. W. Maurice owned all the stock of the Barhydt-Hoeffler Company. One R. V. Holmes was one of the eleven men who purchased the stock of the Barhydt-Hoeffler Company and negotiated the transaction on behalf of himself and as agent for the other ten men. These eleven men purchased the stock in various amounts from $500 to $2,000 each. Holmes collected from the eleven men, including himself, their various subscriptions for the stock and paid the $10,000 to Balfe and Maurice and the latter turned over all the stock owned by them and Mrs. Balfe, properly indorsed, to Holmes for the eleven men, to whom it was distributed in the proportion of the amounts of their respective subscriptions. The eleven men then held a meeting as the stockholders of the Barhydt-Hoeffler Company and elected directors, who met and elected officers of said company. Holmes was instructed by the directors to cause to be incorporated the Home Theater Company (appellee), which he did. The same eleven men who bought the stock of the Barhydt-Hoeffler Company subscribed for all the stock of the Home Theater Company. Between October 4, 1916, and November 14, 1919, the time when the Home Theater Company was organized, the moneys received from the business carried on at the Palace theater were deposited in the bank under the name of the Palace Theater Company and were afterwards turned over to the Home Theater Company; none of it was ever paid to the eleven men individually.

At a regular meeting of the board of directors of the Barhydt-Hoeffler Company held on the first Monday in November, 1916, the following proceedings as shown by the minutes of said meeting took place:

"Secretary was authorized to make regular month-

ly checks for the payment of rent to the Danville
Theater Co., for the Fischer Theater Building.

"Upon motion made by J. G. Fisher, seconded by
Arthur Worrell, it was carried that the Barhydt-
Hoeffler Co. assign over all its right, title and interest
in and to the leases between the Danville Theater Co.
and the said Barhydt-Hoeffler Co., in so far as it af-
fects the Palace Theater, formerly known as the Lyric
Theater, to the Home Theater Co. of Danville, Illi-
nois, for and in consideration of one hundred ($100)
dollars, and that the said Home Theater Co. be given
the right to purchase the lease of the Fischer Theater
now sublet to the Meridian Amusement Company for
and in consideration of $100.00, provided said option
is exercised within eighteen (18) months from this
date."

In accordance with this action of the board of di-
rectors, the leases mentioned were assigned to the
Home Theater Company. It is conceded that the
eleven men paid nothing for the capital stock of the
Home Theater Company. It is also conceded that the
Barhydt-Hoeffler Company has disposed of all its
assets and now exists in name only.

The bill filed by appellant made the Barhydt-Hoef-
fler Company and the Home Theater Company parties
defendant, and it is alleged therein that the Home
Theater Company is now conducting in said Lyric
theater, now known as the Palace theater, a picture
show running more than two reels of films of not
more than 1,100 feet in any one show, to wit: at least
five reels of films of at least 1,100 feet each, in viola-
tion of the covenants of the lease and the written
agreement between complainant and the Barhydt-
Hoeffler Company. The answer of the Barhydt-
Hoeffler Company denies that it entered into said
written agreement, but admits that on November 1,
1916, by agreement with the Home Theater Company,
the latter was authorized to use said Palace theater
for conducting therein theatrical amusements or en-

tertainments, but denies that the Home Theater Company had notice of the agreement between it and appellant. By its answer, it also disclaims any interest in the Palace theater since November 1, 1916, and states that it has no knowledge whether or not the Home Theater Company is conducting a picture show therein by running more than two reels of film of more than 1,100 feet each. It further claims, by its answer, that said written agreement was executed subsequent to the execution of the original lease with complainant and was without any consideration, and that it never conveyed to the Home Theater Company any information as to said written agreement.

In the answer of the Home Theater Company, it is averred that it had no knowledge of said written agreement between the Barhydt-Hoeffler Company and appellant and it is admitted therein that it is now running more than two reels of films of 1,100 feet each at one show.

The court, on the hearing, granted the injunction prayed for as against the Barhydt-Hoeffler Company, but dismissed the bill for want of equity as to the Home Theater Company  The contention of appellant in this court is that the Home Theater Company should also have been restrained.

The position of appellees is that all the transactions enumerated in the assignment of the leases, assets and stock of the Barhydt-Hoeffler Company were made with the eleven men as individuals and that they, not having any knowledge of the contemporaneous restrictive agreement executed by the Barhydt-Hoeffler Company at the time the lease was executed with appellant, purchased the stock, leases and other assets of the Barhydt-Hoeffler Company in good faith and without notice and are not bound by the same. This contention cannot be sustained. While the original contract for the sale of the leases owned by the Barhydt-

Hoeffler Company by the latter to the eleven men was executed by the company in its corporate name, it is fundamental that a corporation cannot sell the stock owned by the stockholders therein. The contract, properly construed, as determined by the actions of the parties thereto in their own construction thereof, was simply a contract between the eleven men and the three stockholders of the Barhydt-Hoeffler Company, whereby the latter agreed to sell to the eleven men their stock in the Barhydt-Hoeffler Company and to cause said company to assign the leasehold interests of said company to the eleven men. The eleven men recognized this and as stockholders immediately elected a new board of directors of the Barhydt-Hoeffler Company, and the board of directors so elected assigned the leases mentioned to the Home Theater Company. These eleven men, who were the only stockholders in the Barhydt-Hoeffler Company, through the board of directors of that company, caused the Home Theater Company to be organized as a corporation and they were and are the only stockholders of the Home Theater Company. The contemporaneous restrictive agreement executed by the Barhydt-Hoeffler Company, at the same time it executed the lease of the Fischer theater with appellant, became a part of the contract set out in the lease. The evidence clearly discloses that this agreement and the lease were executed contemporaneously. The restrictive agreement was a valid and binding contract supported by a good consideration. Its effect and force could not be destroyed by a change in the stockholders of the corporation. There was evidence tending to show that these eleven men, or, at least some of them, had knowledge of the contemporaneous restrictive agreement, but the evidence in regard to such knowledge is conflicting. Conceding, however, that the eleven men who purchased the stock of the Barhydt-Hoeffler Company had no knowledge of this agree-

ment, the corporation, as an entity, cannot claim that it is not bound by the terms thereof because its new stockholders did not know that it existed. The debts and obligations of a corporation are not eliminated by a change in its stockholders. "The shareholders of a corporation are conclusively charged with notice of the trust character which attaches to its capital stock. As to it, they cannot occupy the status of innocent purchasers, but they are, to all intents and purposes, privies to the trust. When, therefore, they have in their hands any of this trust fund, they hold it *cum onere,* subject to all the equities which attach to it." *Clapp v. Peterson,* 104 Ill. 26. It is urged that this doctrine has never been applied except in cases where there was actual or constructive fraud. If the transactions above set out were not tainted with actual fraud, they certainly operated as a constructive fraud upon the rights of appellant. No reason is assigned why the eleven men, as stockholders of the Barhydt-Hoeffler Company, should cause the Home Theater Company to be organized as a corporation. The eleven men, as stockholders of the Home Theater Company, acquired no greater rights and the Home Theater Company no greater assets than the eleven men had, as stockholders of the Barhydt-Hoeffler Company, or than the Barhydt-Hoeffler Company owned and controlled. The result of these transactions was that the Home Theater Company attempted to acquire the leases in question unincumbered with the restrictive covenants of the contemporaneous agreement. Appellant occupied the same position as to the Barhydt-Hoeffler Company as a creditor would occupy under similar circumstances. The eleven men, when they bought the stock of the Barhydt-Hoeffler Company, were charged with notice of the contemporaneous agreement, whether they had actual notice thereof or not. A corporation cannot be relieved of its obligations by the stockholders thereof causing an-

other corporation to be organized and transferring all the valuable assets of the former to the latter.

In section 12, p. 480, vol. 12, R. C. L., it is said: "A very usual form of fraudulent conveyance consists of the shifting of the assets of a debtor to a corporation frequently formed for that specific purpose, by which means the only assets from which creditors could expect to be paid are placed beyond reach of their process. The courts look askance at such transactions, whether the debtor be an individual, a partnership, or another corporation, and if the proper elements are present, will subject the property so transferred to the claims of the creditors of the transferor. The fact that the persons controlling the vendee corporation are substantially the same persons as those making the transfer is a matter strongly indicating fraud."

Appellant exercised its option under the original lease and is paying the increased rental provided therein. It had a right to rely upon the restrictive covenants of the contemporaneous agreement, as a consideration for the renewal of the lease at the increased rental. Appellees are now not only receiving the increased rentals from appellant, but are openly ignoring the restrictive covenants.

That part of the decree ordering that an injunction issue, as prayed for in the bill of complainant against the Barhydt-Hoeffler Company, is affirmed and that part of the decree which dismissed the bill of complainant for want of equity as against the defendant, Home Theater Company, is reversed and the cause is remanded with directions to amend the decree by ordering an injunction to issue as prayed for in the bill as against the defendant, The Home Theater Company.

*Affirmed in part, reversed in part and remanded with directions.*