## J. T. OLMSTEAD
### *v.*
## THE VANCE & JONES COMPANY *et al.*

*Opinion filed April 16, 1902.*

1. CORPORATIONS—*agreement by corporation to buy its own stock can not be enforced to injury of creditors.* An agreement by a corporation to buy its own stock is equivalent to a contract to diminish its capital, and cannot be enforced to the injury of creditors.

2. SAME—*capital stock of corporation is a trust fund for payment of its debts.* Stockholders in a corporation are charged with notice that the capital stock is a trust fund for the payment of the debts of the corporation, and hold the stock subject to all equities which attach to it, irrespective of whether there were fair dealings or fraud between the parties.

3. SAME—*as against creditors, private arrangements between corporation and subscribers to stock are ineffectual.* As against the claims of creditors of a corporation, it is immaterial what private arrangements subscribers to stock may have made with the corporation, and any device by which members of the corporation seek to avoid the liability imposed upon them by law is void as to creditors of the corporation, whether binding or not as between the parties.

*Vance & Jones Co.* v. *Bentley,* 92 Ill. App. 287, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

The Smith & Jones Company, a corporation of Illinois, was formed in 1893 for the purpose of manufacturing boots and shoes, with a capital stock of $125,000, $60,000 of which was subscribed by J. C. Smith, $2500 by David Tilt and $62,500 by Arthur G. Jones. On the 16th day of January, 1894, there was submitted to Bentley & Olmstead, who were wholesale boot and shoe dealers in Des-Moines, Iowa, a proposition, substantially as follows: "Gentlemen—Having secured a factory in the city of Chicago and organized a limited corporation, to be known as the Smith & Jones Company, for the purpose of manufacturing boots and shoes for the wholesale trade exclu-

sively, we make you the following proposition, to-wit: That whereas the company is organized under the laws of the State of Illinois, with a paid-up capital of one hundred and twenty-five thousand ($125,000) dollars, one hundred thousand ($100,000) dollars of which is common stock and twenty-five thousand ($25,000) dollars of it preferred stock, and as the common stock has all been subscribed for, we offer you the privilege of subscribing for fifty shares of the preferred stock at par, $100, guaranteeing eight per cent dividend per annum on the same, and agree to buy back any portion of this stock at the end of two years at one hundred and ten ($110) dollars per share. * * * Thirty per cent of this (subscription price) to be paid at once, thirty per cent February 15, and the balance during March or by April 1,"—which was signed, "Arthur G. Jones, for Smith & Jones Co." This paper was written and signed in the office of Bentley & Olmstead in DesMoines, and they wrote their acceptance at the bottom of it, and afterwards sent their checks in the installments fixed by that instrument, amounting in all to $5000, which checks the company received in Illinois and accepted. Afterwards, on April 6, 1894, a certificate of stock was issued signed by the president and secretary of the company, running to Bentley & Olmstead, for fifty shares, on which was written, in ink, the word "preferred." Up to the time the fifty shares were issued to Bentley & Olmstead by the company such shares had not been paid for by any one, but the shares were deducted from those subscribed for by Smith and Jones, and the payment made by Bentley & Olmstead was credited as a payment of a portion of the subscription made by Jones and Smith. On December 22, 1893, a like proposition was made to the Vance Shoe Company, of Wheeling, West Virginia, which was accepted by them, and under its contract the Vance Shoe Company paid $5000, and received certificates for fifty shares of $100 each, marked "preferred." There was no provision in the by-

laws or charter of said company for issuing preferred stock, and it appears that nothing was done to prefer this stock otherwise than by so designating it and guaranteeing its dividends, and making the agreement to buy it back at the end of two years.

On December 8, 1894, $200 was paid as a dividend upon the Bentley & Olmstead stock, and on April 16, 1895, a like amount. No more dividends were voluntarily paid, but on June 11, 1896, Bentley & Olmstead, having purchased boots and shoes from the Smith & Jones Company, retained $400 of the price, claiming it as dividends upon their stock and endorsed it upon their certificate. The Vance Shoe Company objected to having the Smith & Jones Company, whose name had been changed to the Vance & Jones Company, allow the $400 as dividends, and that item was charged to Jones' personal account. Neither the Vance Shoe Company nor its stockholders or officers ever consented to the allowance of the $400.

On December 12, 1895, Bentley & Olmstead, by letter of that date, notified the Smith & Jones Company that they had decided to accept the company's offer of $110 per share for their stock. No other or further demand was ever made by them for the surrender or cancellation of their stock. On December 13, 1895, Mr. Jones personally replied to their letter of the 12th, in which he said, in substance: "In regard to the stock, I don't want you to dispose of it at this time as I wish to have you with me, provided the arrangement has been satisfactory to you,—and I hope it has,—and I will continue the agreement, so that you won't lose any chance of getting $110 per share, or more, at any time, but will see you some time between now and the 16th of January and will talk the matter over more in regard to your order for January goods." Some negotiations followed this correspondence, looking towards the purchase by said Jones from Bentley & Olmstead of their stock, but the negotiations failed, and the evidence does not show that any direct effort

ever was made to induce the company itself to buy back said stock. Some time after January 16, 1896,—the date the company had agreed to re-purchase said stock,—it became embarrassed, and compromised with all its other creditors for thirty-three cents on the dollar.

On June 1, 1896, the Vance Shoe Company purchased of Smith five hundred and seventy-five shares of his stock in said company and of Jones two hundred and eight shares of his stock in said company, and new capital was put into said company by the Vance Shoe Company. In the contract between the Vance Shoe Company and Jones, in the purchase of his shares, Jones agreed personally to exempt and protect the Smith & Jones Company from any action that Bentley & Olmstead might take to recover the amount paid by them for the stock they held in said company. Subsequently the Vance Shoe Company discovered that under the laws of Illinois it had no power to hold stock in another corporation, and divided its stock among its members, as follows: J. N. Vance five hundred shares, H. E. Vance two hundred and fifty shares and J. C. Riheldaffer eighty-three shares, and these gentlemen became officers of the Smith & Jones Company and changed its name to the Vance & Jones Company. In the meantime, Bentley & Olmstead had purchased merchandise from the Smith & Jones Company, and on February 1, 1898, were indebted thereon in the sum of $3001.80. A disagreement arising in the Vance & Jones Company relative to the management of the business, a bill was filed on February 1, 1898, asking that the business be wound up and liquidated, and that the same be done under a receiver to be appointed by the court, and under the order, direction and protection of the court. On the same day a receiver was appointed by the court and entered into the possession of the property. Afterwards the receiver was directed to advertise for claims against the company, and did so, and reported to the court a list of the claims which had been filed with

him, which aggregated $78,942.61. The list of claims filed included, among others, the claims of J. N. Vance for $4000, the Vance Shoe Company for $214.70, and also the claim of Bentley & Olmstead for $2498.20, which they claimed due them under the contract with the Smith & Jones Company to re-purchase their stock in that company at $5500, less the amount of $3001.80 due from Bentley & Olmstead to the Vance & Jones Company for merchandise.

On May 12, 1898, an order was entered, on the application of the receiver, on notice to all parties, that a claim should be allowed, as a just and lawful claim against the estate, in favor of each of the claimants named therein, for the amount set opposite their respective names, except as to such claim or claims to which objections should be filed within ten days from the entry of this order. Within the time allowed an objection was filed to said claim of Bentley & Olmstead by the Vance Shoe Company, J. N. Vance, H. E. Vance and J. C. Riheldaffer. It appears that said company is, and was at the time such bill was filed and receiver appointed, insolvent and unable to pay its creditors more than sixty-five cents on the dollar. On July 13, 1898, the claim of Bentley & Olmstead was referred to a master in chancery to take proofs and report. The master reported, in his opinion, that Bentley & Olmstead, having held themselves out to the world as stockholders, are estopped, as to creditors, in taking any other position, and disallowed their claim. Bentley & Olmstead filed exceptions to the master's report, which the court below sustained and allowed their claim for the sum of $2937.45. Upon appeal to the Appellate Court for the First District the decree of the circuit court allowing the claim of Bentley & Olmstead was reversed and the cause remanded, with directions to disallow said claim of Bentley & Olmstead, from which action of the Appellate Court plaintiff in error prosecutes this writ of error.

I. M. EARLE, and SAMSON & WILCOX, for plaintiff in error.

WILSON, MOORE & MCILVAINE, for defendants in error.

Mr. JUSTICE RICKS delivered the opinion of the court:

It is contended by defendants in error, the objectors below, that an agreement by a corporation to buy its own stock is equivalent to a contract to diminish its capital, and cannot be enforced to the injury of creditors. Plaintiff in error contends, that at the date of the contract between the Smith & Jones Company and Bentley & Olmstead none of the objectors were creditors; that the contract, as soon as the stock was delivered to Bentley & Olmstead, became an executed contract, and therefore no present creditors of the corporation are or can be injured, and that the corporation could lawfully make such an agreement to re-purchase its own stock, provided that at the date of such agreement the rights and interests of then existing creditors would not be affected.

It has been repeatedly held that the capital stock of a corporation is a trust fund for the payment of its corporate debts, and that the shareholders of a corporation are charged with notice of the trust character which attaches to it; that they are, to all intents and purposes, privies to the trust, and hold the stock subject to all equities which attach to it; and this is so, irrespective as to whether there were fair dealings or actual or constructive fraud between the parties. (*Clapp* v. *Peterson*, 104 Ill. 26; *Commercial Nat. Bank* v. *Burch*, 141 id. 519.) The evidence shows that neither J. N. Vance nor the Vance Shoe Company had knowledge of the conditional subscription of Bentley & Olmstead at the time the subscription was made, and that as soon as they did learn of it they objected to the carrying out of the provisions of that agreement in respect to paying the guaranteed dividends and for the re-purchase of the stock. As a matter of fact, this agreement to re-purchase has never been

carried out, and Bentley & Olmstead are now attempting to enforce this secret and conditional agreement, which it is plainly to be seen will be to the injury of the existing creditors of the corporation. This court has repeatedly held that, as against the claims of creditors, it is immaterial what private arrangements subscribers may make with the corporation, and that any device by which members of the corporation seek to avoid the liability imposed upon them by law is void as to creditors, whether binding or not as between themselves and the corporation. (*Clapp* v. *Peterson,* 104 Ill. 26; *Alling* v. *Wenzel,* 133 id. 264; *Coleman* v. *Howe,* 154 id. 458.) If such an arrangement as that made between the Smith & Jones Company and Bentley & Olmstead could be enforced, a corporation might then, at the time of its organization, make such a contract with each of its stockholders as to totally destroy the capital stock of the concern and deprive the creditors of all security from this trust fund. The capital stock is a trust fund furnished for the benefit of the creditors of the corporation, and equity will not permit it to be destroyed or impaired to their injury for the benefit of stockholders. The creditors of this corporation had a right to rely upon the application of the capital stock toward the payment of their claims, and to permit this plaintiff in error to cancel his stock upon this inequitable agreement, and to receive a premium of ten per cent in addition, would be in violent disregard of a long line of decisions of this court.

It is contended by plaintiff in error that if this claim should fail it should fail only as to those objectors who have a right to object and who do object, and that the decree should be limited to the protection of such creditors' rights. This contention is manifestly unsound. Upon objection by any of the creditors it became necessary for plaintiff in error to establish his claim. The whole foundation of this claim rests upon the agreement with the corporation to re-purchase Bentley & Olmstead's

stock.   It then became necessary for the court to determine, as between plaintiff in error and the creditors, if this agreement to re-purchase could be enforced.   That this agreement is void as to the creditors has been shown, and Bentley & Olmstead's entire claim resting upon this agreement must fall with it.

It is also contended by the plaintiff in error that the record in this case fails to show the objectors were creditors, and that therefore the court below properly overruled their objections.   The record shows that the Vance Shoe Company and H. E. Vance duly filed their claims with the receiver.   The order of the circuit court was that all claims so filed should be legal and valid claims unless objections were filed thereto within ten days, and as no objection appears to have been filed to the claims of the Vance Shoe Company and J. N. Vance, then, under the order of the court, they must be held valid and binding claims upon the company.   But the record also shows that the total claims filed amounted to $78,943.81, and, calculating from the known rate and dividends paid, the total claims allowed were $73,208.16, and therefore the amount of claims objected to amounted to $5735.65. Bentley & Olmstead's claim, which was objected to and included in that amount, was for $2498.20, which leaves a balance of objected claims amounting to $3237.45.  As the claim of J. N. Vance was for $4000, he must therefore be a creditor for at least $762.55.  This being so, it is immaterial whether or not the other objectors were creditors.

Under the view we have taken of this case it is not necessary to discuss the numerous other points presented by plaintiff in error in his brief.

The action of the Appellate Court in reversing the cause and remanding it, with instructions to disallow said claim without prejudice to the claim of the receiver against plaintiff in error, was proper.   The judgment of the Appellate Court should therefore be affirmed.

*Judgment affirmed.*