McINTYRE v. E. BEMENT'S SONS.

CORPORATIONS — STOCKHOLDERS — REPURCHASE OF STOCK — INSOLVENCY—EFFECT.

Under section 7057, 2 Comp. Laws, a shareholder holding the promise of a corporation to purchase his shares, at his option, cannot enforce the promise after the corporation is in fact insolvent.

Error to Ingham; Wiest, J. Submitted June 13, 1906. (Docket No. 82.) Decided October 1, 1906.

Assumpsit by D. Harold McIntyre against E. Bement's Sons, Detroit Trust Company, receiver, for breach of agreement to repurchase certain corporate stock. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Wilkinson, Post & Oxtoby,* for appellant.

*Cahill & Wood,* for appellee.

Ostrander, J.   A verdict and judgment for defendant were directed by the trial court, pursuant to a stipulation of counsel that the jury be discharged and the case disposed of as the court should find the law to be.   The action is assumpsit for damages for breach of an agreement which reads:

"D. Harold McIntyre,

   "*Dear Sir:*   We agree two years from Jany. 1st, 1902, at your option to buy from you the preferred and common stock which we have this day sold you for .the sum of twenty-five hundred dollars, the amount you paid for it.
                                    "Yours truly,
                                       "E. Bement's Sons.
"By Edwin J. Bement, Asst. Secy."

This instrument was delivered to the plaintiff with the certificates of stock.   The time of delivery is left somewhat uncertain.   The stock was actually paid for on October 21, and December 11, 1901.   It is the recollection of plaintiff that the certificates were given him in December, 1901.   The certificates of stock and the stockbook evidence a sale in the ordinary manner to a subscriber thereto. Plaintiff held and received dividends on the stock for two years from January 1, 1902.   Late in January or early in February, 1904, the exact time uncertain, he exercised his option and called upon the corporation to repurchase the stock.   His demand was not refused nor was it complied with.   On October 24, 1904, the directors of E. Bement's Sons filed in the circuit court for the county of Ingham, in chancery, their petition praying for a voluntary dissolution of the corporation.   On the same day, the Detroit Trust Company was appointed temporary receiver, qualified, and thereafter continued the business of the corporation; later it was made the statutory receiver. The petition contained the averment that the said corporation "is entirely solvent so far as having abundant assets to meet all its obligations of every kind," and that

its assets were worth more than $1,600,000 and its liabilities were $420,136.61; meaning, of course, liabilities other than capital stock. Later, the assets were appraised at $887,-000, and to a going concern were worth that sum. At forced sale they would bring less than the amount of the corporate debts. E. Bement's Sons made other like sales of stock, and upon the demand of the purchasers bought back the stock from them. The capital stock of E. Bement's Sons was originally $20,000, increased February 19, 1901, to $500,000, and on August 7, 1901, again increased to $1,250,000, divided as $500,000 preferred and $750,000 common stock. The last-named increase of capital was subscribed for by O. F. Barnes, Howard Bement, and Edwin J. Bement. As to the preferred stock, it was considered and treated as treasury stock, the sales of which were to be made for, and the proceeds of sales to go to, the corporation. The common stock had been in like manner subscribed for, in form, at least, by stockholders of the company. See *Continental Varnish & Paint Co.* v. *Secretary of State*, 128 Mich. 621.

It is the theory of counsel for the appellant:

1. That the sale of stock to plaintiff was a conditional sale. "He was never a stockholder except under his conditional contract of purchase."

2. That, by whatever means the corporation acquired control of the stock, plaintiff is to be treated, for all purposes of this suit, as a bona fide purchaser from the corporation of stock which the corporation had legally acquired. An applicable distinction is attempted to be drawn between subscription to stock and sales of stock owned by the selling company.

3. That the record presents no question of the rights of creditors opposed to the enforcement of plaintiff's contract.

4. That the promise to purchase was valid when given, and cannot be made invalid by the subsequent insolvency of the maker.

Counsel for appellee question the legal as well as the nominal or formal authority of the assistant secretary to make the option contract for the corporation; insist that it is the fact, and is important that the option contract

was not made at the time the stock was purchased; that
the option was not exercised at the contract time; that
the receiver is not bound, nor is the property of the cor-
poration, by the option contract.   The learned trial judge
was of opinion that a solvent corporation, unhampered by
legislation, may purchase its own stock; an insolvent cor-
poration, in process of dissolution or insolvent to the ex-
tent that dissolution is impending, may not do so; that
at the time plaintiff elected to change his relations with
the corporation from those of shareholder to those of
creditor, the rights of creditors had intervened.

Plaintiff did not make a conditional purchase of stock,
nor assume the position of stockholder upon condition.
Whether he is treated as a subscriber to shares or a pur-
chaser of stock owned by the corporation, he became and
assumed to be the holder and owner of the shares of stock
of the corporation, entitled to vote, to receive dividends,
to transfer his interest as any other stockholder might do.
He was absolute and unconditional owner of the stock
and it stood of record in his name.   He held the contract
of the company to buy from him his stock, at his option,
after two years, and to pay him for it the sum of $2,500.
It would seem that, admitting the contract in question to
be valid, the rights of the parties were established at the
time plaintiff, acting according to the terms of the con-
tract, elected to sell his stock.   If, by such election,
his right to be paid $2,500 for his stock accrued, he then
and there became a creditor whose right to enforce the
legal obligation of the corporation to pay him might be
exercised at any time within the period of the statute of
limitations.   The defendant pleaded, and produced evi-
dence to establish, the fact that on and after October 24,
1904, the corporation was insolvent, in the sense that it
was unable to pay its debts as they matured.   The act of
filing the petition on the day last named is the first act of
insolvency proven.   It is averred in the petition, however,
that the increase of capital to $1,250,000 was for the pur-
pose of paying debts then existing and procuring capital

to carry on the business and that the money realized by sale of the capital stock was used to pay a mortgage debt and make improvements and there was left only a small amount to use to run the business; that it was then determined, for the purpose of securing necessary capital, to increase the preferred stock by $250,000, and on December 18, 1902, the issuing of that amount of stock was duly authorized and efforts made to sell the same at par. The inability to sell the additional stock is one of the reasons given for the existing conditions and for liquidation. Plaintiff was, by his proxy, represented at the meeting of December 18, 1902. How his stock was voted does not appear. I assume, from the evidence stated and from other evidence, that when plaintiff elected in January or February, 1904, to exercise his option, the corporation was, in fact, insolvent, a fact evidently found by the trial court. If the evidence were less conclusive upon this point, I think, for reasons hereinafter given, there is no theory permitting a recovery by the plaintiff which does not require him in this case to establish affirmatively the solvency of the corporation at the time of exercising his option. We are, therefore, not required to determine whether a corporation may, under any circumstances, lawfully purchase or agree to purchase shares of its stock from a shareholder. The precise question is whether a shareholder holding the promise of the corporation to buy his shares, at his option, may exercise the option and enforce the promise after the corporation is in fact insolvent.

The contention of counsel for plaintiff that if the promise when given was valid, subsequent insolvency of the maker would not make it invalid, is, as to the usual and ordinary contracts of corporations and individuals, sound. But the promise of such a corporation to buy its own stock, if under any circumstances valid, must be considered as made, and accepted with the understanding that the shareholder may not, in face of insolvency of the company, change his relation from that of shareholder to that of creditor, escaping the responsibilities of the one and receiving the

benefits of the other. To this rule there appears to be no exception. The cases cited by counsel for appellant expressly recognize the rule. *Wisconsin Lumber Co.* v. *Telephone Co.,* 127 Iowa, 350 (69 L. R. A. 968); *Vent* v. *Spice Co.,* 64 Minn. 307. See, also, *Melvin* v. *Insurance Co.,* 80 Ill. 446; *Vance & Jones Co.* v. *Bentley,* 92 Ill. App. 287; *Olmstead* v. *Vance & Jones Co.,* 196 Ill. 236; *Clapp* v. *Peterson,* 104 Ill. 30; *Price* v. *Coal Co.,* 17 Ky. Law Rep. 865. See, generally, for collection of authorities, 1 Wilgus on Private Corporations, §§ 299–302.

The liabilities of a corporation last to be paid out of corporate assets are those represented by the capital stock. The act under which defendant corporation is organized provides (2 Comp. Laws, § 7057) that if the capital stock of any such corporation shall be withdrawn and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable the stockholders shall be jointly and severally liable to any creditor in an action founded on this statute to the amount of the sum refunded to him or them respectively. In *American Steel & Wire Co.* v. *Eddy,* 130 Mich. 266, a construction was placed upon this provision and reasoning advanced which supports the proposition, not there precisely involved, that it is, in substance and effect, a limitation upon the power of the corporation to acquire by purchase shares of its stock to the detriment of creditors of the corporation. It appearing that plaintiff was a shareholder to the time of exercising his option, that at the time it was exercised the corporation was insolvent, and that if the corporation had then purchased his stock at the price stated, creditors and other shareholders of the corporation would have been prejudiced, there was no legal breach of the agreement to repurchase the stock.

The ruling of the trial court was right, and the judgment is affirmed.

Carpenter, C. J., and Blair, Hooker, and Moore, JJ., concurred.