GRINDE, Appellant, v. DAKOTA TRUST & SAVINGS BANK
et al, Respondents.

(222 N. W. 670.)

(File No. 6244.   Opinion filed January 5, 1929.)

*Jones, Matthews & Fitzpatrick,* of Sioux Falls, for Appellant.
*Roy E. Willy,* of Sioux Falls, for Respondent.

BROWN, J.   Plaintiff appeals from an order sustaining a demurrer to his complaint on the ground that it fails to state facts sufficient to constitute a cause of action.

In substance, the complaint alleges that defendant in May, 1921, was owner of 121 shares of the capital stock of the Farmers' State Bank of DeSmet and that defendant's cashier, V. H. Masters, was the owner of 10 shares of stock in said Farmers' State Bank, by reason whereof defendant bank and Masters were in control of the Farmers' State Bank; that defendant bank, desiring to have

plaintiff take charge of and operate the DeSmet bank, on May 2, 1921, made an agreement in writing with him, whereby it sold to him for $1,100 ten shares of stock in the DeSmet bank, and agreed, upon request by plaintiff at the end of a year, to repurchase the shares at the same price he paid, plus any assessments which might be levied upon said shares of stock; that, in consideration of said agreement, plaintiff took charge of the Farmers' State Bank as cashier, and operated it until it closed its doors in 1924; that, after its suspension, plaintiff paid a stockholder's double liability assessment of $1,000; that, at the end of the year, he demanded that defendant bank repurchase the stock, but that, instead of repurchasing, defendant made an extension agreement with plaintiff for another year, and that such renewal or extension agreement was made at the end of each year until the Farmers' State Bank closed its doors on January 30, 1924; that at the end of each year, pursuant to the terms of the agreement, he demanded that defendant bank perform its agreement for the repurchase of the stock and return to him the $1,100 he paid therefor; that defendant bank failed, and was taken over by the superintendent of banks on May 12, 1924; that thereafter plaintiff filed with the superintendent of banks his claim for the sum of $2,100, being the $1,100 paid for the stock and the $1,000 paid by him as assessment thereon, as a common claim against the bank, which was rejected.

■ Although not alleged in the complaint, it is stated in appellant's argument, and not controverted by respondent, that defendant bank acquired the shares which it held in the DeSmet bank through having been compelled to foreclose its lien as pledgee of the shares to secure loans previously made, and, even in the absence of any such statement, it would be presumed that the defendant bank had not violated the law in acquiring those shares, but had acquired them lawfully. Roges v. Gladiator G. M. & M. Co., 21 S. D. 412, 113 N. W. 86; 22 C. J. 147, 148.

■ Since the agreement was renewed at the end of each year from the date thereof, it follows that on May 2, 1924, it was renewed for another year; in other words, defendant then agreed that, at the end of a year from that date or on May 2, 1925, it would take the stock back from plaintiff at the price he had paid for it, plus the amount of any assessment he had paid on it. But before May 2, 1925, arrived, defendant bank had become insolvent,

and as an insolvent bank had passed into the control of the super-intendent of banks on May 12, 1924.*

Assuming, without deciding, that the contract for repurchase of the stock was valid, and could have been enforced against Dakota Trust & Savings Bank while that bank was solvent and a going concern, the question is presented, whether it can be so enforced after that bank has become insolvent and passed into the hands of the superintendent of banks. The authorities are practically unanimous that in such a situation the contract cannot be enforced. White v. Lorimer's City Dye Works (Idaho), 269 P. 90, was a case in all respects similar to the instant case. The appeal was from an order sustaining a general demurrer to the complaint. In affirming the order, the Idaho court says:

"The allegation that the corporation is insolvent makes it unnecessary to determine the sufficiency of the complaint in other respects. A contract by a corporation to repurchase its capital stock is not enforceable against the corporation while insolvent. 7 R. C. L. 236, § 210; 14a C. J. 280, § 2126, notes 1, 2, 3; McIntyre v. Bement, 146 Mich. 74, 109 N. W. 45, 10 Ann. Cas. 143 and note; Schulte v. Boulevard Gardens Land Co., 164 Cal. 464, 129 P. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013; Porter v. Plymouth Gold Mining Co., 29 Mont. 347, 74 P. 938, 101 Am. St. Rep. 569; Olmstead v. Vance & Jones Co., 196 Ill. 236, 63 N. E. 634; In re Fechheimer Fishel Co. (C. C. A.), 212 F. 357. See, also, Brown v. Reed, 31 Idaho, 529, 174 P. 136."

In Hoover Steel Ball Co. v. Schaefer Ball Bearings Co., 90 N. J. Eq. 164, 106 A. 471, the question involved here is discussed at some length, and in reaching the same conclusion as announced in the Idaho case it is said:

"The reasoning underlying the determination of the courts is that the capital stock of a corporation constitutes a trust fund for the payment of debts, and that creditors are presumed to contract with the corporation upon the faith that its stock, so far as appears by its records, has been paid in, and that those who appear to be stockholders are, in fact, stockholders; this entirely aside from statute. If a purchaser of, or subscriber to, stock may con-

---

*The opinion as printed in 222 N. W. 670 says defendant bank passed to control of superintendent of banks January 30, 1924, whereas it was Farmers State Bank that closed then.

tract with the corporation that it shall repurchase the stock, then every purchaser or subscriber may do likewise, and if these contracts may be enforced against the corporation after insolvency, then not only will creditors be deprived of recourse to the capital stock as a trust fund, but the apparent purchasers and subscribers will be converted into creditors to share with other creditors whatever assets there may be left. Such a situation is, of course, opposed to public policy, and cannot be permitted to exist."

The order appealed from is affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.