694

## In re PENFIELD DISTILLING CO.
## LYONS v. SACHS.
### No. 9104.

Circuit Court of Appeals, Sixth Circuit.
Dec. 4, 1942.

Leslie W. Morris, of Frankfort, Ky. (Marion Rider, of Frankfort, Ky., on the brief), for appellant.

D. A. Sachs, Jr., of Louisville, Ky., for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This is an appeal from an order of the District Court sustaining the disallowance by the referee of a claim in bankruptcy. A single determinative issue of fact is presented: Is appellant Lyons, as he claims, a *creditor;* or is he, as was found by the referee and the district judge, a *stockholder* of the bankrupt corporation, the Penfield Distilling Company?

Appellant pulls a heavy laboring oar. Findings of fact by a referee in bankruptcy, confirmed by the district judge, will not be set aside, on appeal, on anything less than a demonstration of plain mistake. Tennessee Finance Co. v. Thompson, 6 Cir., 278 F. 597, 600; In re Maki, 6 Cir., 18 F. 2d 89, 90; Kowalsky v. American Employers Ins. Co., 6 Cir., 90 F.2d 476, 480.

A detailed discussion of the background from which appellant's claim evolved is necessary. The appellant and his partners, Reed and Bixler, operated a distillery in Scott County, Kentucky, under the firm name of Tom Bixler Distilling Company. The partnership was indebted to appellant in the sum of $38,000. The partnership, and the three partners in their individual capacities, entered into a contract in writing on February 8, 1937, with the Penfield Company, a stock selling Ohio corporation, for the sale, to a corporation to be organized by the Penfield Company, of all the partnership property, including real estate, distillery plant, warehouses, whiskey, tradename, trade-marks, and good will.

Under this agreement, the corporation which the Penfield Company undertook to organize under the laws of Ohio, for the acquisition of the partnership property, was to be capitalized at $250,000 of preference stock and an undetermined number of shares of common, non-par stock; and the

expenses incident to organizing the corporation and certifying its shares for sale were to be advanced and paid by the Penfield Company.

It was agreed that the partnership would transfer and convey all of its assets to the corporation, when duly organized and existing, upon issuance and delivery by the corporation of all its common stock, and its assumption of and agreement to pay all the partnership debts. By the terms of the agreement, the common stock was to be endorsed in blank and deposited with a bank as escrow trustee, upon the understanding that if the Penfield Company failed within forty-five days thereafter to secure, from the Securities Commission of Ohio, a certificate for sale of the preference stock of the company to be organized, its common stock would be delivered to the partnership by the escrow agent. If, on the other hand, such certificate permitting the sale of the preference stock should be secured by the Penfield Company within the limited period, the escrow agent was authorized to deliver the common stock as directed by provisions of the agreement.

The Penfield Company agreed to act as fiscal agent for the corporation, when organized, to undertake the sale and disposition of such part of the preference stock as might be reasonably necessary to enable the corporation "to pay off and discharge the existing indebtedness assumed by said corporation at the time of conveyance" by the partnership of the distillery premises, and to "provide reasonably adequate financial facilities for the proper and economical prosecution of said distillery business." The Penfield Company agreed to prosecute the work of selling the stock diligently, vigorously and promptly from the time certificate for sale of the preference stock should be obtained from the Ohio Securities Commission.

It was agreed that the corporation, after its organization, would pay off and discharge the partnership indebtedness of $38,-000 to appellant Lyons, and all other indebtedness of the partnership. The agreement recited: "Said Lyons has agreed to accept, and Penfield [The Penfield Company] undertakes that said corporation will, promptly after certification of said issue of preference stock, deliver to said Lyons preference stock of the par or declared value of thirty-eight thousand dollars, and said stock, when so tendered to him by Penfield or said corporation, said Lyons agrees to accept in satisfaction of said indebtedness assumed and undertaken to be paid by said corporation."

In the paragraph immediately following that just quoted, it was provided that, in consideration of the agreement of Lyons to accept the preference stock in discharge of the indebtedness of the new corporation to him in the amount of $38,000, the Penfield Company, on or before twelve months from the date of delivery of the preference stock to Lyons, would purchase from him one-half of such stock at par, plus accumulated dividends; and on or before the expiration of two years, would purchase at par, plus accumulated dividends, the remainder of his preference stock. It was further provided that should Lyons so elect, he should have the right to retain the preference stock agreed to be purchased from him by the Penfield Company, upon notifying the latter of such intention at least thirty days prior to the ultimate date upon which the Penfield Company had agreed to purchase and pay for his stock.

The Penfield Company agreed to cause the new corporation to employ Bixler as distiller upon a fixed salary basis and to issue him portions of its common stock, and to employ Reed as secretary at a fixed salary and to deliver him $5,000 of its preference stock.

The corporation to be organized in compliance with the contract of February 8, 1937, was duly incorporated under the laws of Ohio on February 15, 1937, as the Tom Bixler Distilling Company; and held its first meeting of stockholders and directors on February 22, 1937. The minutes of the organization meetings show the election of six directors, among whom Lyons was elected treasurer, Bixler, vice-president, and Reed, secretary of the company.

Lyons did not attend these meetings, and Reed deposed that, shortly after the time of the meetings appellant stated to him that he had no intention of becoming a director or officer of the new company, or of having anything to do with its business, and that all he wanted was to collect his money. In his affidavit, Lyons corroborated this statement. Lyons deposed that, in the inception of the distilling corporation, he informed its organizers of his purpose to withdraw entirely from the distilling business; that he gave no authority for his election as director and treasurer of the new corporation; that he did not qualify as

an officer or director or perform any duties as such, attend any meetings, or in any manner participate in the management of the company.

It is important to observe, however, that Lyons signed a waiver of notice of a special meeting of the board of directors of the distilling company to be held in Cleveland, Ohio, on May 11, 1937; and that he tendered, by writing dated July 10, 1937, his resignation as treasurer and as director of the company. Moreover, an order of the referee, entered in this cause, certifies that appellant objected to the receipt in evidence of photostatic copies of the minutes of meetings of the board of directors and stockholders of the bankrupt corporation, "but, however, not on the ground of any failure to properly prove the authenticity of said minutes of the meetings of the board of directors and stockholders."

The Penfield Company failed to secure from the Securities Commission of Ohio the necessary certificate for sale of the preference stock of the new company within the forty-five-day period prescribed in the contract of February 8, 1937; and, on April 23, 1937, Tom Bixler resigned as vice-president of the distilling company which then bore his name.

Notwithstanding the default of the Penfield Company, the appellant individually entered into a new agreement, dated May 10, 1937, with that company and with the newly incorporated Tom Bixler Distilling Company. This agreement provided that, in consideration of the delivery by appellant to the two companies of a deed and a bill of sale conveying and transferring the partnership property to the Tom Bixler Distilling Company, that company and the Penfield Company would carry out and perform all obligations set out in the contract of February 8, 1937. All other documents were to be held by the same escrow trustee named in the agreement of February 8th; and the two corporations agreed that the Tom Bixler Distilling Company would deliver to the escrow trustee a deed conveying to appellant, Lyons, all property described in the foregoing deed and bill of sale. It was provided that if, within forty-five days, the Tom Bixler Distilling Company should fail to secure from the Securities Commission of Ohio a certificate to sell the company's preference stock, or fail to procure a permit to operate its distillery, the escrow trustee would deliver to appellant the deed of conveyance and bill

of sale; but, if the certificate and the permit were obtained within the time limited, the deed and bill of sale would be delivered to the Tom Bixler Distilling Company and the requisite certificates for the preference stock referred to in an original letter of instructions to the escrow trustee were to be delivered to appellant.

Another provision of the contract recited that the Penfield Company would assume the payment of a promissory note of the Tom Bixler Distilling Company for $10,000, endorsed by the Penfield Company and G. R. Lyons and delivered on the same date to a Frankfort, Kentucky, bank; and that, as between Lyons and the two corporations, Lyons and his partnership would be saved harmless from any liability or obligation growing out of the execution of the note.

The corporate charter of the Tom Bixler Distilling Company was amended on May 11, 1937, so as to change the name of the corporation to the Penfield Distilling company, which is the bankrupt in this cause. This charter amendment also effectuated changes with respect to the Class A (preference) and the Class B shares of its capital stock. Upon liquidation of the corporation, the holders of Class A shares of its capital stock were to be given preference over the holders of Class B shares to the extent of $100 per share, plus accumulated and unpaid dividends, instead of a preference of $50 per share, as provided in the original charter of the Tom Bixler Distilling Company.

The Penfield Distilling Company [afterwards the bankrupt company] obtained, as of August 7, 1937, a date beyond the time limit prescribed in the agreement of May 10, 1937, certification from the Ohio Securities Commission of its right to sell preference stock. The distilling company did not, however, as obligated, promptly deliver to Lyons preference stock of par or declared value of $38,000; but, after a delay of nearly six months, delivered to the escrow trustee, on February 2, 1938, a certificate for 380 shares of its preference stock, issued in the name of "The Penfield Company" and endorsed in blank. The letter of transmittal from the Penfield Company, written by its president to the escrow trustee, asserted that the stock was handed the trustee under the agreement with Lyons. In this letter, it was further stated: "You will note that this certificate bears date of September 30, 1937, but due to a

misunderstanding between our offices, same has reached the writer only recently. We, therefore, desire you to consider delivery of this stock made as of September 30, 1937, the date which the certificate bears."

The escrow agent offered to deliver the stock certificate for the 380 shares to Lyons, who refused to receive it and on February 7, 1938, wrote a letter to the escrow trustee recounting the conditions of his agreement. He called attention to the fact that although the sale of the stock was certified on August 7, 1937, and the stock certificate bore date September 30, 1937, it was not delivered either to Lyons or the escrow trustee until February 2, 1938. He stated that in the circumstances he was not obligated to accept the stock and considered the Penfield Company bound by its contract to pay off and discharge his debt after the organization of the new corporation, the Penfield Distilling Company. He suggested that the escrow trustee retain the stock until the matter should be adjusted. A copy of his letter to the escrow trustee was sent by him to the Penfield Distilling Company. In a letter dated February 9, 1938, to the Penfield Company, Lyons demanded payment of his debt in compliance with the agreement, saying: "If you had delivered the stock according to contract I would have accepted it, but I am unwilling to accept it when the delivery is made six months after the certification and when the whiskey business in general is demoralized."

The stock certificate was never physically delivered to Lyons, but remained in the hands of the escrow agent until December 3, 1940, when it was filed in a state court proceeding brought by Lyons against the Penfield Company, which will be hereinafter discussed. The stock was never formally transferred to Lyons and his name does not appear as a stockholder on the books of the bankrupt company.

On February 26, 1938, the attorney for the Penfield Company wrote Lyons' attorney asserting that Lyons' claim against the Penfield Company was premature, for the reason that the obligation of his client to purchase one-half of his stock from Lyons was definitely fixed as of August 7, 1938, at the earliest; that is, one year from the date that the stock should have been delivered to Lyons. The attorney wrote that "no doubt performance will be made by my client on the date stipulated." The letter suggested the possibility of a compromise payment in whiskey, if Lyons would accept some reduction in the amount of the $38,000 claimed as due him by the Penfield Company.

Reply to this letter was made on March 12, 1938, by Lyons' attorney, who wrote that the chief complaint of his client was that, though the stock certificates of the Penfield Distilling Company had been "certified" by the State of Ohio on August 7, 1937, the certificates had not been actually issued until September 30, 1937, and had not been tendered to Lyons but had been delivered to the escrow agent some six months after August 7, 1937.

The letter from Lyons' attorney to the attorneys for the Penfield Company continued: "Mr. Lyons' idea was that he could have used this stock as collateral on any obligation that he might have and that at the time it should have been delivered it had a value for that purpose, whereas, at the time it was sent to the Escrow Agent, he thinks it did not have much value for collateral purposes. *However, he is accepting the stock but not releasing The Penfield Distilling Company from its obligation to promptly deliver the same to him, or to have the same issued as of the date of the certification.* [Italics ours.]

"I note that you say in your letter the date of commencement of the obligation to purchase one-half of the stock is definitely fixed as of August 7, 1938, and that the discussion at this time is premature and that no doubt performance will be made by your client on that date. In view of that statement, I have advised Mr. Lyons to let the matter rest until August 7, 1938. It is my construction of supplemental writings, however, that Penfield Distilling Company becomes a guarantor of Penfield Company for the fulfillment of Penfield Company's agreement to purchase this stock, but that is a matter I assume it will not be necessary to discuss at this time, as I accept your statement that performance by Penfield Company of the contract to purchase the stock of Mr. Lyons will be made on August 7, 1938, that is, one-half of it on that date and the other one-half on August 7, 1939."

Appellant Lyons deposed in his affidavit in this case that he accepted the delivery of the stock as of August 7, 1937, for the purpose of fixing the maturity of the obligation of the Penfield Company to re-

purchase the stock from him, and in order to retain the stock during the interim as security on such obligation; but that in accepting such delivery, it was understood that he was not releasing the Penfield Company from its obligation to pay the debt to him, and that he did not intend to, nor did he, become a stockholder of the Penfield Distilling Company, "or join the corporate venture."

Lyons, through his attorney, pressed his claim for satisfaction and, on December 28, 1938, threatened suit against the Penfield Company and the Penfield Distilling Company. The Penfield Distilling Company, on April 5, 1939, filed in the United States District Court for Western Kentucky a petition for corporate reorganization under Chapter 10 of Acts of Congress for 1938 relating to bankruptcy; and, no feasible plan of reorganization having been presented, the District Court, on November 8, 1939, adjudged the debtor corporation a bankrupt.

During the pendency of the bankruptcy proceeding in the matter of the Penfield Distilling Company, appellant Lyons brought suit against the Penfield Company in Kentucky, in the Franklin Circuit Court, and obtained default judgment against the defendant company for $19,000, with six percent interest thereon from August 7, 1938, and for an additional $19,000 with six percent interest thereon from August 7, 1939. This judgment was signed by the state judge on January 3, 1940, but was not filed for entry until November 13, 1940.

In his petition filed in the state court suit, Lyons alleged unequivocally that the distilling company *had issued to him and delivered to him on August 7, 1937, $38,000 of its preference stock* of the declared or par value of $100 per share. Moreover, in averring the failure of the defendant, the Penfield Company, to purchase such stock from him as agreed, he declared that he had "carried out and performed his part of said contract and *is now ready, able and willing, and has at all times since the delivery of said stock to him, been ready, able and willing to deliver the same to the plaintiff* [manifestly he means the defendant] *and upon the payment by it to him of the par or declared value thereof.*" [Italics ours.]

Furthermore, in the instant bankruptcy case, appellant Lyons alleged in his proof of claim that "the preference stock under the contract of February 8, 1937, was delivered as of August 7, 1937, *by agreement of the parties,* although the actual delivery thereof was subsequent to August 7, 1937." [Italics ours.]

■ (1) From the tangled tale told of weird and complicated corporate financing, the District Court found appellant to be a *stockholder* and *not a creditor* of the bankrupt corporation. It was reasoned that while appellant would have been justified in refusing to accept the delayed delivery of the stock, thereby preserving his status as creditor, he receded from that position and agreed to accept the stock; and that his subsequent actions were entirely inconsistent with his present contention that he did not become a stockholder. On the record, which has been reviewed, we cannot say that there has been a demonstration of plain mistake in the concurrent findings of the referee and the district judge. On the contrary, the finding that appellant is a stockholder rather than a creditor of the bankrupt corporation is supported by substantial evidence.

■ Whether a person is a stockholder is a question of fact. Clarke v. Kelley, 8 Cir., 19 F.2d 920.

■ A stock certificate is mere paper evidence of the title to stock, and not the stock itself; nor is the certificate necessary to the existence of the stock. It merely certifies to an independently existing fact, and title to shares of stock may pass without the actual delivery of stock certificates. Charles v. Hopkins, 217 Ky. 842, 845, 290 S. W. 720, and cases there cited.

In Burchett v. Louisa Light & Power Company, 235 Ky. 296, 300, 31 S.W.2d 373, not only was this held to be true, but it was said that there is no merit in an argument that one is not a stockholder because he attended no stockholders' meetings, and did not otherwise evince an interest as a stockholder.

In Burgess v. Seligman, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359, cited by appellant, the facts upon which persons were held not to be liable as stockholders were, in controlling respects, plainly differentiable from the facts in the case at bar.

(2) The appellant insists that the bankrupt corporation, by reason of its failure to tender him stock "promptly after certification," is obligated to pay the $38,000 in-

debtedness which it assumed under the contract of February 8, 1937; and that the bankrupt corporation, under the contract of May 10, 1937, was liable as a guarantor for the loss which appellant sustained as a result of the failure of the Penfield Company to perform its obligation, pursuant to the contract of February 8, 1937, "with respect to providing reasonably adequate financial facilities for the proper conduct of the business," and as a result of its failure to purchase the stock contracted to be delivered to appellant. In none of the cases stressed by appellant as authority for his position was the corporation insolvent at the time for performance of its assumed obligation to the stockholder. Granite Brick v. Titus, 4 Cir., 226 F. 557; Turner v. Tjosevig-Kennicott Copper Co., 116 Wash. 223, 199 P. 312; Central Lumber Co. v. Fall, Tex.Civ.App., 264 S.W. 513.

In our judgment, the District Court correctly held that inasmuch as the rights of creditors had intervened before the obligation of the bankrupt corporation to repurchase Lyons' stock had matured, the repurchase agreement was invalid and unenforcible. Appellant remained a stockholder and did not become a creditor of the bankrupt corporation.

A contract between a corporation and a stockholder by which the latter is to receive the par value, or any part of his stock, before all corporate debts are paid is contrary to public policy, and void. Ellsworth v. Lyons, 6 Cir., 181 F. 55, 58; Hamlin v. Toledo, St. L. & K. C. R. Co., 6 Cir., 78 F. 664, 670, 36 L.R.A. 826; Spencer v. Smith, 8 Cir., 201 F. 647, 654; Warren v. King, 108 U.S. 389, 396, 2 S.Ct. 789, 27 L.Ed. 769. Cf. Mathews v. Bradford, 6 Cir., 70 F.2d 77, 79, in which Durand v. Brown, 6 Cir., 236 F. 609, cited by appellant, is distinguished. See, also, Vanden Bosch v. Michigan Trust Co., 6 Cir., 35 F. 2d 643.

The language of the Supreme Court of Michigan in McIntyre v. E. Bement's Sons, 146 Mich. 74, 78, 79, 109 N.W. 45, 46, 10 Ann.Cas. 143, is pertinent here. "The precise question is whether a shareholder holding the promise of the corporation to buy his shares, at his option, may exercise the option and enforce the promise after the corporation is in fact insolvent. The contention of counsel for plaintiff that if the promise when given was valid, subsequent insolvency of the maker would not make it invalid, is, as to the usual and ordinary contracts of corporations and individuals, sound. But the promise of such a corporation to buy its own stock, if under any circumstances valid, must be considered as made, and accepted with the understanding that the shareholder may not, in face of insolvency of the company, change his relation from that of shareholder to that of creditor, escaping the responsibilities of the one and receiving the benefits of the other. To this rule there appears to be no exception. The cases cited by counsel for appellant expressly recognize the rule. Wisconsin Lumber Co. v. Greene & W. Telephone Co. [127 Iowa 350], 101 N.W. 742, 69 L.R.A. 968 [109 Am.St.Rep. 387]; Vent v. Duluth Coffee & Spice Co., 64 Minn. 307, 67 N.W. 70." The Michigan court also cited, inter alia, Price v. Pine Mountain Iron & Coal Co., 32 S.W. 267, 17 Ky.Law Rep. 865. Cf. Medley v. Johnson, Tr., 200 Ky. 689, 255 S.W. 532.

In Germann v. Farmers' Tobacco Warehouse Co., 260 Ky. 249, 84 S.W.2d 82, cited by appellant, the point for decision was whether a *solvent* corporation with the consent of all of its stockholders and creditors may purchase a portion of its own capital stock for retirement for the purpose of reducing its capital. In the instant case, the corporation was insolvent at the time its obligation to repurchase appellant's stock matured. This fact is controlling against his contention.

The order of the District Court is affirmed.